REICH v. WORKMAN.

Opinion delivered November 10, 1913.

REAL ESTATE BROKERS—RIGHT TO COMMISSIONS.—When W. entered into a contract with R. to sell R.'s land, the contract providing that R. might sell the land himself, and W. was to receive a commission only if he was instrumental in making the sale. *Held*, where W. interested one P. in the purchase of the land, and P. later purchased directly from R. without R. knowing that he had previously negotiated with W., that W. is entitled to his commission on the sale, W. having been instrumental in procuring the sale.

Appeal from Boone Circuit Court; *George W. Reed,* Judge; affirmed.

STATEMENT BY THE COURT.

R. L. Workman instituted this action against J. L. Reich to recover commissions for selling real estate for the latter. The material facts are substantially as follows:

On the 20th day of June, 1911, R. L. Workman and J. L. Reich entered into a written contract whereby the former became agent for the latter, for a stated commission, to sell his real estate. That part of the contract material to the issue raised by the appeal is as follows:

·"It is further agreed that the above contract shall not in any way prevent said J. L. Reich from disposing of said property himself, and that the 10 per cent commission shall only be binding when the said R. L. Workman is instrumental in making sale or trade."

Workman immediately began to try to find a purchaser for the property, and spent some money in advertising the same for sale. He interested J. E. Potts in the property, and Potts offered him five thousand dollars for it. On July 15, 1911, Workman wrote to Reich at Wagoner, Oklahoma, where he then resided, that he had an offer for the property at five thousand dollars, and that that was the best offer he had been able to get. In the letter he stated that if Reich would sell the property at that price he would agree to cut his commission

to two hundred and fifty dollars. Reich declined the offer. Soon after this, his wife went back to Everton, Arkansas, where the property was situated, on a visit, and while there found out that Potts was interested in buying it. Some days after Reich had declined the offer made by Potts to Workman, Potts again went to Workman's office and asked if he had heard anything further from Doctor Reich. Workman replied that he had not, and Potts then told him that he believed he would write to Reich, and Workman told him all right. On July 25, Potts wrote to Reich that at the time Reich's wife was at Everton he did not think he wanted to buy the property, but had decided, if Reich would price it right, he would buy. After some further correspondence, Reich sold the property to Potts at the price of sixty-five hundred dollars. Workman did not inform Reich that Potts was the man he had interested in the property. The jury returned a verdict for the plaintiff, Workman, and the defendant has appealed.

*Troy Pace,* for appellant.

1. It is clear from the evidence, even if the action of appellee could in any sense be termed as a "cause" of the sale, that after he had failed to make it, and had abandoned the effort, there was another and intervening cause, in the person of appellant's wife who interested Potts in the purchase of the property, induced him to take up the matter with appellant, and brought about the sale. Under such conditions, appellee is not entitled to commissions. 54 Pa. St. 394; 23 S. W. (Tex.) 483; 44 L. R. A. 333, note; 19 Cyc. 251; 138 U. S. 380.

2. Instructions 3 and 4, given over appellant's objections, invaded the province of the jury in instructing them upon the facts. 45 Ark. 173; 49 Ark. 153; 15 Ark. 492; Const. Ark., art. 7, § 23.

*E. G. Mitchell,* for appellee.

1. There was in this case a written contract with limitations binding upon both parties. This court has

already settled the rule in this State in cases of this nature. 53 Ark. 52, and authorities cited; 76 Ark. 375.

2. There was no error in the instructions given.

HART, J., (after stating the facts). At the request of the defendant, the court instructed the jury as follows:

"1. It is admitted that the defendant made the sale in question, and therefore your verdict will be for the defendant, unless you further find from a preponderance of the testimony that the plaintiff was instrumental in making the sale."

"2. By 'instrumental' is meant the doing of something in connection with the sale by the plaintiff that was a direct moving cause of the sale being made."

At the request of the plaintiff, and over the objection of the defendant, the court, among other instructions, gave the following:

"2. The fact that Potts and defendant Reich finally consummated the trade between them will within itself not defeat plaintiff's right to recover providing you believe that plaintiff's action caused in any way that trade to be made."

"3. The fact that plaintiff did not notify the defendant that he was trying to sell to Potts is not a matter to be considered by you against him. The contract did not require such notification—the only question is, did the plaintiff cause the trade to be made in any way."

The defendant assigns as error the action of the court in giving these instructions for the plaintiff.

No prejudice resulted to the defendant from the giving of instruction No. 3. He resided at Wagoner, Oklahoma, and the land he wished to sell was situated near Everton, Arkansas. It was not of any interest to him to know that Potts was the probable purchaser of the land; nor can it be said that he even suffered any injury from the fact that Workman did not state to him that Potts was interested in purchasing the land. In the case of *Veasey* v. *Carson*, 177 Mass. 117, 53 L. R. A. 241, the court held: "The concealment of the identity of the purchaser from his principal will not preclude a broker

from recovering his commission on a sale of land, where it does not appear that there was anything in the facts or circumstances to render that fact of any importance to the seller.''

The contract between Workman and Reich did not preclude Reich from himself making the sale of the land, but the contract provided that Workman would be entitled to his commission, provided he was instrumental in making the sale.

Instruction No. 2, given at the request of the plaintiff, and assigned as error by the defendant, concludes with the clause: ''Providing you believe that plaintiff's action caused in any way that trade to be made.'' The words ''in any way,'' as used in the instruction, refer to the means used by the plaintiff in securing Potts as a purchaser of the land, and do not mean that Workman was entitled to recover if he did anything whatever to interest Potts in the land. This is shown by the fact that the court defined the word ''instrumental,'' at the request of the defendant, to mean the doing of something in connection with the sale by the plaintiff that was a direct moving cause of the sale being made. The giving of this instruction at the request of the defendant shows that the court adopted this theory of the meaning of the contract, and if the defendant thought that the instructions complained of were in conflict with the meaning of the word ''instrumental,'' as defined at his request, he should have made a specific objection to the instructions complained of, and, doubtless, the court would have changed the phraseology of them to meet his objection.

It is finally urged by the defendant that the verdict is not supported by the evidence; but we do not agree with him in this contention. While the contract between Workman and Reich gave to the latter the right to make the sale himself, it was also provided that the former should be entitled to his commissions if he was instrumental in making the sale. The testimony shows that he took up the matter of selling the property to Potts

and interested him in it.    He endeavored to sell the property to Potts for the best price obtainable, but was unable to complete the sale himself.    Afterward Reich completed the sale, but we think the testimony shows that Workman was instrumental in making the sale, or was the procuring cause of the sale, under his employment for that purpose, within the meaning of our previous decisions on the subject.    *Stiewel* v. *Lally*, 89 Ark. 195; *Branch* v. *Moore*, 84 Ark. 462; *Hunton* v. *Marshall*, 76 Ark. 375; *Scott* v. *Patterson*, 53 Ark. 49.

The judgment will therefore be affirmed.