## WORTHEN *v.* STEWART.

### Opinion delivered January 4, 1915.

1. BROKERS—COMMISSIONS—QUESTION FOR JURY.—The owner of land wrote to a broker who held an option to purchase the same, a letter stating that other land would be accepted from a prospective purchaser in the place of a cash payment which was required in the option. The broker communicated this fact to the purchaser and he received a telegram stating that the purchaser had closed the deal. This telegram was shown to the owner who refused to sign an agreement to pay commissions, prepared by the broker, but an agreement was executed by the owner in which he agreed to pay a specified commission on "deal now pending—on condition that said deal is finally closed." The owner testified that he understood that no commission was to be paid until the sale was completed by proper conveyances made to the purchaser. *Held*, if there were any grounds for an understanding by the broker that the agreement provided that he should receive commission if he

found á purchaser ready, willing, and able to buy, the question as to the meaning of the contract was properly submitted to the jury.

2.  EVIDENCE—SALE OF LAND—CONDITIONS—PAROL EVIDENCE.—In an action by a broker for commissions earned on the sale of lands, parol evidence is admissible to show that certain conditions to the sale were prerequisite, and were to be performed before an instrument, providing for the payment of commissions, was to become effective.

3.  BROKERS—EVIDENCE—COMMISSIONS—BAD FAITH.—Where the owner of land is dissuaded from writing in an agreement with a broker covering commissions, certain conditions relative thereto, parol evidence is admissible which tends to show bad faith on the part of the broker, to the effect that he neglected to notify a prospective purchaser of the conditions in the sale.

4.  BROKERS—COMMISSIONS—FAILURE TO COMPLETE SALE.—As a condition to the payment of commissions to a broker for the sale of land where the contract of sale provided that the owner shall inspect certain lands of a prospective purchaser to be taken in "trade." The broker agreed to notify the purchaser of this condition. *Held,* where the broker failed to notify the purchaser of this condition, and the purchaser later refused to complete the trade, the broker will not be entitled to commissions within a contract whereby the owner agreed to pay commissions when the deal was finally closed, even though the owner's inability to convey a good title was one of the reasons why the trade was not made.

5.  BROKERS—COMMISSIONS—QUESTION FOR JURY.—In an action by a broker for commissions earned in negotiating a sale of land to one S., which sale was never completed, evidence by the owner to the effect that he agred to pay the broker commissions on a sale of a portion of the land to another purchaser because of the failure of the proposed trade with S., is admissible and made a question for the jury, as to whether there was an accord and satisfaction as to the broker's claim for commission on the trade with S., by the payment of the commission on the subsequent sale.

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant brought this suit for commission for the sale of certain real estate upon the following contract:

"Pine Bluff, Ark., March 12, 1912.

"I agree to pay to W. M. Worthen, the sum of $1,000—as his commission deal now pending between

myself and T. C. Skeen, of St. Louis, said commission to be paid either in city property or in lands or a note either way we may agree to—this is on condition that said deal is finally closed."

(Signed)    "M. R. Stewart."

It is alleged that Skeen agreed to buy the property at the price made and was able to pay it, that the deal was closed and that the defendant refused to perform the contract.

The answer denied an agreement to pay the thousand dollars commission or any other sum except upon condition that the sale of the Hoffman place, negotiations for which were pending between Skeen and appellee was made and the deeds conveying same executed, that the agreement was intended to reflect this fact, and denied that the deal was closed and alleged that Skeen refused and failed to perform the contract of sale according to its terms.

The answer was amended alleging that Worthen continued as appellee's agent for the sale of the lands and finally sold same and after a discussion between them of the failure to close the deal with Skeen, he agreed to pay Worthen a commission of five per cent upon the sale, made of a portion of the lands and executed two notes in pursuance of such agreement, one of which had been paid, and that it was understood that the notes were executed in full payment of any commission due said Worthen because of his efforts to dispose of the Hoffman Plantation, and same was pleaded as an accord and satisfaction.

Worthen testified that he had an option from Stewart, dated February 15, 1912, to purchase within two months, for the price designated, the property known as the Hoffman Plantation, containing 1,628 acres, under the terms specified therein. Stewart was to furnish an abstract of title, showing the place free from liens and for delay in perfecting the title the holder of the option was authorized to cancel it or extend the time. On the 22d day of February, Worthen transferred this option

by endorsement on the back of it, to T. C. Skeen for ten days for a recited consideration of $1.00. He testified further that Skeen examined the land, agreed to take it and pay the price demanded, $7,000 in cash, but later substituted therefor 822 acres of land in Poinsett County which Stewart agreed to accept for the cash payment in the following letter:

"Pine Bluff, Ark., February 24, 1912.
"W. M. Worthen, Pine Bluff, Ark.

"Dear Sir:—Referring to my Option Contract to you dated February 15, 1912, covering 1,628 acres of land known as the Hoffman Plantation at Swan Lake in Jefferson County, Arkansas. In lieu of the $7,000 mentioned therein to be paid in cash, I will accept clear from incumbrance, the 822 acres of land in Poinsett County, Arkansas, the most of which is in the vicinity of Fisher, as per letter of February 21, to you from Mr. Skeen, and this will authorize you to make the Option Contract so read.

"Yours very truly,
"M. R. Stewart."

After this Skeen wired and wrote that he was ready to close the deal then, by lettergram of March 11, as follows:

"W. M. Worthen,
"Pine Bluff, Ark.

"I have closed the deal on Hoffman Plantation at Swan Lake for you and Stewart. Papers to be exchanged this week. Get abstracts complete and wire me immediately when you or you and Stewart can be here with same, together with deed executed as I will direct. Then await my advices, that everything here may be ready. Hurry, as I am going away soon.

"T. C. Skeen."

After receiving this telegram Worthen showed it to Stewart and told him he was satisfied he could close the deal and wanted to know what commission he would receive and the agreement set out to pay $1,000 was executed. Stewart said it was all right and began to figure

upon getting his abstracts and asked Worthen to secure the deed and abstract of the Poinsett County land, saying he found no objection to that except a lien for $50 which Skeen agreed to pay. Skeen sent the deed of the Poinsett County land but Stewart never executed the deed to his place and the trade was not consummated.

The deal was closed between Stewart and Skeen on March 12, 1912, and he had not been paid his commission. He tried to help Stewart get up a good abstract to his Swan Lake place, but they failed to do so. He stated further that Stewart asked him what the Poinsett County lands were worth and he replied that he knew nothing whatever about them but there were good lands in that county and Stewart said, "They were worth taking a shot at." He denied that Stewart agreed to sign the letter of February 24, only on condition that he inspect the Poinsett County lands and approve their value and the title. He admitted he continued to act as Stewart's agent and finally sold the place, but denied that the notes taken in payment for commission were in satisfaction of the commission due for the sale claimed to have been made with Skeen.

Skeen testified that he took up the proposition of the sale of the Hoffman Plantation with Worthen who had an option to purchase from Stewart which was assigned to him. That under the option he had the right to purchase within two months from February 15; and was prepared to take the land over and ready and able to pay for it, and would have done so had not Mr. Stewart defaulted in his contract and refused to perform it. He complied with all the conditions of the option contract upon his part, extended it sixty days upon an agreement with Stewart and that the sale was closed. "By virtue of the contract and under its terms we finally closed the deal. We closed the contract. The land was never taken over. The title to a portion of it failed, and Mr. Stewart refused to clear it." That he afterward sued Stewart for breach of contract and the case was compromised.

An identified letter to Stewart reads as follows: "Referring to your letter of the 26th inst. The contract speaks for itself and that is what I stand on. (Signed) T. C. Skeen."

He stated the option contract was not changed except as to the extension of time agreed upon and for the substitution of the land in Poinsett County for the $7,000 cash payment. That he received the letter, already set out, of Stewart's to Worthen agreeing to take the Poinsett County lands and there was no condition attached relative to the inspection or appraisement of them, that Worthen may have said something about it subsequent to that, but not at the time.

Stewart testified that Worthen was acting as his agent, and he gave him the option contract to purchase the Hoffman place for $7,000 cash, and the payment of the $20,000 indebtedness due on it, which was later transferred to Skeen of St. Louis. Shortly afterward Skeen sent the letter to Worthen for him to sign, agreeing to take 822 acres of Poinsett County land in lieu of the $7,000 cash payment, and when Worthen presented it for signature "I said I don't know anything about those lands in Poinsett County, they may be covered with water, we will have to inspect them, and I will write under here 'Subject to inspection,' " and Worthen said no, I don't believe I would do that, that might delay the trade, I will write to Skeen and explain that to him, that it is subject to inspection, and with that understanding I signed the agreement. I instructed him to communicate this to Mr. Skeen and told him I would take the land only under that condition. He told me that he communicated this to Skeen and afterward I suspected that he had not done it and asked him to show me a copy of the letter to Skeen. He stated he never made an inspection of the Poinsett County lands and did not have the abstract of title examined and passed on, but that he told Skeen that he was ready at any time to inspect the land and wrote him that. He read copies of letters to Skeen in which he stated he was as anxious to get the matter

closed up as Skeen could be, that he was doing all that could be done to clear the title to the Hoffman place. In the letter of July 26, he stated, "I am as anxious over the matter as anyone can be, but I want to say that I can't agree with your contention that the trade is already consummated and contingent only on perfecting the title, as I have never agreed to take the Poinsett County lands in full payment for my equity in the Swan Lake place until I have inspected the lands and passed on their value and title."

He stated that in reply to this letter he received the one from Skeen saying "the contract speaks for itself and that is what I stand on." The contract in regard to the commission was written in Worthen's office and he objected to the first one, saying he did not want to pay the thousand dollars without the trade went through and dictated another, the one set out, to pay only on condition that "the deal was finally closed," and it never was closed. He said further that Worthen had never made any demand on him for this commission until the suit was bought, that he never inspected the Poinsett County lands and approved the title, nor agreed to accept them and that no deed was tendered him for them, and he waited for them to show him the lands but it was never done. Later in September Worthen told him at his office that he could sell 1,238 acres of the Hoffman place for $21,000, the indebtedness against it if Stewart would pay him $500 commission, which he declined to do, saying, since there was no profit in it he could not afford to pay a commission, but that if he would reserve thirty acres from the sale, he would pay him $100 commission, that the thirty acres were not reserved and he authorized him to make the sale, but understood that Whitener, the purchaser, paid him a commission. In December Worthen told him he could sell the 300 acres and they closed the deal for $25 an acre for 390 acres, Worthen saying, "you are going to pay me a pretty good commission for this, ain't you?" and I said "Yes, I feel under obligation to pay you a full 5 per cent. commission on this trade, as we

fell down on the Skeen trade. He never had up until that time said a word about the Skeen transaction. I did not know he demanded it until I was served with summons. I never said to him that "the Poinsett County lands were worth $10 any way and I would take a shot at them without seeing them."

Worthen being recalled stated that when Skeen sent the letter of February 24, to him for Stewart's signature, that he, Stewart, took it off in the morning and in the afternoon came back and said he had investigated the lands and talked with some Poinsett County people and, "as it is practically velvet, I will just take a shot at it." Mr. Stewart did not state that he would only accept the proposition contained in my letter conditioned that he first be allowed to examine the land in Poinsett County, nor did he undertake to write on the letter, "subject to inspection." I did not tell him not to put it on there as it might delay the trade, nor that I would communicate it to Skeen by letter. I returned the letter of the 24th inst. to Skeen after Stewart signed it and some time after that Stewart began to talk about an inspection of the Poinsett County lands. He denied having a conversation with Stewart in the office of Jones in Pine Bluff in which he stated that Stewart signed the contract, conditioned on the inspection of those lands and that he started to write "subject to inspection" on the letter.

The court refused to instruct the jury at plaintiff's request, that if they found from the evidence that Skeen and Stewart closed their deal and that Skeen agreed to accept the property from Stewart as per terms of the option contract and amendment thereto, that they should find for the plaintiff without regard to the terms of the contract or whether they carried it out or not or whether the failure to consummate the deal was due to the act of the seller or purchaser, that if the deal was closed the plaintiff had fulfilled his contract and was entitled to recover and also that Stewart agreed to accept the Poinsett County land by the amendment of the option contract dated February 24, and it was not incumbent upon the plaintiff to show the lands to Stewart.

It gave, over his objection, instruction numbered 3, submitting the question of whether or not Stewart in signing the letter of February 24, agreed to the substitution of the Poinsett County lands for the cash payment only on condition that he should be allowed to first inspect said lands and the assurance of Worthen upon his not amending the letter, showing the fact, that he would communicate the condition to Skeen, that so far as Worthen, plaintiff, was concerned, a fulfillment of this condition was essential to the completion of the contract without regard to whether Worthen communicated the condition to Skeen or not and if while the negotiations were pending, Skeen repudiated that condition, stating that he stood upon the contract as written, then Worthen would not be entitled to recover and to find for the defendant.

The court also submitted to the jury in instruction numbered 1 on its own motion the question of the meaning of the agreement to pay, in the commission contract "on condition that said deal is finally closed," stating each party's contention in regard thereto.

*A. H. Rowell,* for appellant.

1. The rule is that where a contract is reduced to writing, it is presumed to contain all the terms of the contract, verbal or otherwise, and extrinsic evidence is inadmissible to vary, contradict or add to the written instrument. Appellee's testimony that he accepted the Poinsett County land "subject to inspection," was, therefore, inadmissible. Because, the agreement attempted to be proved by parol is entirely inconsistent with the written agreement, because, in the written agreement appellee attaches no condition whatever to his statement "I will accept," etc. 21 Am. & Eng. Enc. of L., 1093; *Id.* 1090; 96 Ark. 135; 12 Met. (Mass.) 275; 12 O. St. 201; 6 *Id.* 1-4; 35 Ark. 156; 80 Ark. 505; 24 Ark. 210; 30 Ark. 284; 90 Atl. 667; 168 S. W. 1119; 108 Ark. 506; 105 Ark. 455.

2. If Skeen and Stewart closed their deal, and Skeen agreed to accept the property from Stewart according to the terms of the option contract and the

amendment thereto, it was immaterial, so far as appellant was concerned, what the terms of that contract were, or whether it was carried out or not, or whether the failure to finally consummate the deal was due to the act of the principal or of the purchaser. Appellant on the closing of the deal between those parties had fulfilled all that his contract required, and was entitled to his commission. 44 L. R. A. 593; 20 L. R. A. 398; 130 N. Y. 676; 6 L. R. A. (N. S.) 855; 87 Ark. 507; 89 Ark. 290.

*Taylor, Jones & Taylor,* for appellee.

1.    The authorities cited by appellant to sustain the elementary rule with reference to the alteration of written instruments by parol testimony, can have no application in this case. There is no effort here to vary the terms of the writing, but merely to show that certain conditions were to be fulfilled before the obligations, or agreements, should become binding. And that was a legitimate matter of proof. 82 Ark. 219; 76 Ark. 140; 78 Ark. 586; 88 Ark. 383; 94 Ark. 575; 100 Ark. 365; 39 Ark. Law Rep. 27.

The condition imposed by appellee was plainly admissible in evidence under the rule that where the agent is guilty of fraud, dishonesty or unfaithfulness in the transaction of his agency, such conduct is a bar to the recovery by him of compensation. 31 Cyc. 1498, and cases cited in note 5; 1 Clark & Skyles, Law of Agency, 819; Story on Agency, § § 333, 334; Mechem on Agency, § § 643, 798; Tiffany on Agency, 418; 96 Ark. 451.

2.    There was ample testimony to warrant the submission of the question of accord and satisfaction. However, a general exception to an instruction, as was the case here, is not sufficient. 78 Ark. 279. When Stewart informed Worthen that he was going to pay him five per cent. commission because they had fallen down on the Skeen trade, it was Worthen's duty to object then to such a statement, and he is now estopped to deny that it was an accord and satisfaction. 98 Ark. 269; 100 Ark. 250.

KIRBY, J., (after stating the facts). Appellant insists that the agreement for payment of the commission

with the option contract and amendment, all in writing, definitely expressed the terms upon which the sale should be made, that he furnished a purchaser, ready, willing and able to buy the lands and did in fact sell them to him in accordance with the terms of the contract, and earned his commission and was entitled to it, and that the court erred in not so instructing the jury, and in allowing the introduction of parol testimony to establish a condition to the unqualified letter of acceptance of the Poinsett County lands, in substitution for the $7,000 cash payment requested by the option contract.

(1)     This is not a case of a real estate broker earning his commission by finding a purchaser, willing and able to buy the land offered for sale. By the terms of agreement the commission was only to be paid on condition that the deal pending was finally closed, the appellant having already negotiated for the sale of the lands and received the telegram from Skeen that the deal had been closed, which was shown to appellee before the execution of the agreement to pay commission.

If the deal was closed at the time of the execution of the agreement to pay commission, there was no necessity for stating that it was pending, and that the commission would be paid on condition that it was finally closed, for the commission was already earned in accordance with the contention of appellant and the obligation to pay would doubtless have been written without condition at all. Appellant stated that the option contract had been transferred to Skeen; and the letter of February 24, from Stewart of unconditional acceptance of the Poinsett County lands had already been sent to him and he had received a telegram from Skeen that the deal was closed, which he showed to appellee before he executed the commission agreement. Appellee stated that he did not like the form of agreement to pay commission already prepared by appellant and dictated the one set out herein, agreeing to pay commission on condition that the deal pending was finally closed, understanding thereby

that it should be finally consummated and the lands duly transferred by proper conveyances.

Appellant understood the contract differently, and the court did not err in permitting the jury to pass upon its meaning under proper instructions. Its terms were ambiguous certainly if there is ground for appellant's understanding of its meaning and with his statements that he showed the telegram to Skeen, stating the deal had been closed and the conveyances should be prepared and delivered, to Stewart, before the commission agreement was executed furnishing grounds certainly for his, Stewart's, understanding of the meaning of the contract contended for by him, that the commission should be paid on condition that the deal was finally completed and the lands conveyed.

(2-3) Appellant's contention that the court erred in not declaring appellant's letter of the 24th an unconditional acceptance of the Poinsett County lands, in lieu of the $7,000 cash payment, without any duty on his part to show the lands to appellee for his inspection was erroneous and the court did not err in refusing it.

The answer alleged and the testimony tended to prove that this letter prepared by Skeen, addressed to appellant was signed by the appellee upon condition that the lands should be inspected and accepted by him only if their value and title were approved, in lieu of the $7,000 cash payment required by the option.

Appellee testified that it was signed on this condition, "that he started to write, 'subject to inspection' on the letter and was dissuaded from doing so by appellant, who said he feared it might interfere with the consummation of the sale," and agreed to notify Skeen that such was the condition at the time of returning the letter to him and was instructed to do so by appellee. Appellant denied this, it is true, but he is concluded by the jury's finding upon the question. This testimony does not come within the rule of the admissibility of parol contemporaneous evidence to contradict or vary the terms of a valid written instrument, but within the rule allowing the ad-

mission of such testimony to show that certain conditions or prerequisites were to be met or performed before the instrument executed should become effective.

In *Barr C. & P. C.* v. *Brooks-Ozan Merc. Co.,* 82 Ark. 219, our court quotes with approval from *Ware* v. *Allen,* 128 U. S. 590: "We are of the opinion that this evidence shows that the contract upon which this suit was brought never went into effect; that the condition upon which it was to become operative never occurred, and that it is not a question of contradicting or varying a written instrument by parol testimony, but that it is one of that class of cases, well recognized in the law, by which an instrument whether delivered to a third person as an escrow, or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or to be ascertained thereafter." In *Burke* v. *Dulaney,* 153 U. S. 228, that court said: "In an action by the payee of a negotiable promissory note against the maker, evidence is admissible to show a parol agreement between the parties, made at the time of the making of the note, that it should not become operative as a note until the maker could examine the property for which it was to be given, and determine whether he would purchase it."

The rule is well established and has been frequently recognized in our decisions. *Graham* v. *Remmel,* 76 Ark. 140; *Barton-Parker Mfg. Co.* v. *Taylor,* 78 Ark. 586; *Main* v. *Oliver,* 88 Ark. 383; *William Brooks Medicine Co.* v. *Jeffries,* 94 Ark. 575; *American Sales Book Co.* v. *Whitaker,* 100 Ark. 365; *Pickler* v. *Arkansas Pkg. Co.,* 39 A. L. R. 127.

The testimony is also admissible under the rule requiring fidelity on the part of the agent in the transaction of his agency. As stated in *Doss* v. *Long Prairie Levee District,* 96 Ark. 451, "The rule is well settled, both by the text writers and adjudicated cases, that where the agent is guilty of fraud, dishonesty or unfaithfulness in the transaction of his agency, such conduct is a bar to the recovery by him of wages or compensation." 31 Cyc. 1498; 1 Clark & Skyles on the Law of Agency, 819; Story

on Agency, §§ 333 and 334; Mechem on Agency, §§ 643, 798; Tiffany on Agency, 418.

(4-5)   It may be that the trade was not consummated because of appellee's inability to convey a good title to the lands, and the evidence indicates such was one of the causes, but as between the parties to this suit the condition relative to the acceptance of the Poinsett County lands in lieu of the cash payment had not been performed and certainly the deal was not finally closed within the meaning of the contract for the payment of commission.   Neither do we think the court erred in instructing the jury relative to the accord and satisfaction by the payment of a certain commission for the sale of a portion of the plantation included within this transaction. There was sufficient testimony to warrant the giving of the instruction.

Finding no prejudicial error in the record, the judgment is affirmed.