THOMASON *v.* HESTER.

Opinion delivered December 14, 1931.

*George W. Emerson,* for appellant.

*Charles A. Walls,* for appellee.

BUTLER, J. After considerable negotiation, a contract was entered into between the appellees and one W. R. Cargile, which contract is as follows:

"This agreement, made and entered into this 26th day of May, 1930, by and between W. R. Cargile, party of the first part, and Luther Hester and Orrie Hester, parties of the second part, witnesseth:

"That the party of the first part agrees to convey to the parties of the second part the following described lands in the city of El Dorado, Union County, Arkansas, to-wit: (Here follows description), free and clear of all incumbrance except a building and loan mortgage, at this time not exceeding $6,000, which the parties of the second part are to assume and agree to pay. In payment for the above lands, the said parties of the second part are to sell and convey to the party of the first part the property which they agree to convey herein to the party of the first part.

"That the parties of the second part hereby agree to sell to the party of the first part the following described personal property, to-wit: (Here follows description.)

"That all of said lands the parties of the second part agree to convey and the personal property are to be free of any incumbrance except Federal land loan and fifteen hundred dollars owing to Dr. Hemphill, all not to exceed the sum of four thousand dollars.

"That it is hereby expressly agreed that each party is to furnish to the other good and sufficient abstracts of title to the lands agreed to be exchanged, the title to be approved by competent attorneys before title shall pass;

that possession is to be delivered of the property not later than the first day of June, 1930, whether the titles shall have been approved at that time or not.

"That the parties of the second part agree to secure manner of payment of the Dr. Hemphill indebtedness satisfactory to the party of the first part.

"That the party of the first part is to assume and to pay the indebtedness against the property to be conveyed to the party of the first part by the parties of the second part, provided same does not exceed in the aggregate the sum of four thousand dollars.

"That the deeds conveying the respective parcels of land shall be by warranty deed with relinquishment of dower and of homestead of the wives of any of the parties who may be married at the time of the execution of the deeds."

The above contract was never carried out, for, on the 28th of May, 1930, two days after its execution, the appellees disavowed the same, and advised of the withdrawal of their property from the market. The appellant thereupon brought this suit against the appellees, alleging that he was the broker with whom the lands of appellees were placed for sale; that he had negotiated the contract aforesaid, and that he had procured a purchaser for the property, ready, willing and able to purchase the same on terms acceptable to the appellees, and was entitled to his commission. The appellees answered, denying the allegations of the complaint, and asserted by way of defense certain misrepresentations and false statements of the appellant made to them, upon which they relied, and which induced them to enter into the contract. The case was submitted to the jury upon the pleadings and evidence adduced at the trial, and a verdict was returned in favor of the appellees. From that judgment is this appeal.

There was testimony tending to show that the appellant procured Cargile to enter into the contract, and that the latter was ready, willing and able to carry out his agreement; that the contract was breached by the

appellees upon the discovery that certain representations made to them by the appellant which induced them to make the contract were false, so that, if the liability of appellees depended upon the enforceability of the contract between them and Cargile, it seems as if they would be liable for the broker's fees claimed, as it appears that the contract was disavowed, not because any defects in Cargile's title to the property were ascertained or that he had failed in any particular to carry out his agreement (although these things might be shown in a suit by Cargile to enforce the contract). Cargile has withdrawn from the picture, and is not asserting any rights under the contract.

The court erred in giving instruction No. 2, requested by the appellees. The undisputed evidence shows that the appellant brought Cargile and the appellees together. It was shown that Cargile was worth from forty-five to fifty thousand dollars, was receiving a salary of $300 per month, and that immediately after the signing of the contract he deposited with an attorney in Little Rock a deed duly executed, by which he conveyed the property in El Dorado in conformity with the contract, and with this deed deposited his abstract of title for appellees' inspection, and, in so far as the evidence discloses, did everything that he was required to do under the contract to carry into effect its terms, and there is no testimony to the effect that appellees did not fully understand the terms of the contract, or that they were laboring under any disability. The instruction requested is as follows: "The court instructs the jury that the burden is on plaintiff in this case to show by a preponderance of the evidence that he found a purchaser who was ready, willing, and able to purchase their land according to the terms agreed upon; and if you find that there was no final agreement or meeting of the minds of the said W. R. Cargile, the prospective purchaser, and the defendants, then your verdict will be for the defendants."

There is nothing in the evidence, either from an inspection of the contract or the testimony relative to its

execution, tending to show that there was no final agreement or meeting of the minds of Cargile and the appellees. On the contrary, the evidence in this case shows that it was a completed and binding contract, and the court erred in giving the instruction.

It does not follow, however, that the instructions requested by the appellant were improperly refused or that he is entitled to a reversal of the judgment of the trial court and a judgment here for the amount of his claim. The appellant requested two instructions. Instruction No. 1 was for a directed verdict for the amount sued for, and instruction No. 2 directed the jury to find for the plaintiff if the evidence showed the procurement by him of a purchaser for appellees' property, and that a contract was entered into between them for the purchase and sale thereof. The testimony adduced on the part of the appellees tended to show that the appellant had discussed with them for a considerable period of time the question of the sale of their property, which was a farm consisting of 636 acres of land in Lonoke County; that they first placed a price of $20 per acre cash upon it, and later reduced this price somewhat. The appellant finally persuaded them to consent to an exchange of property with Cargile, representing to them that the property in El Dorado was being rented for $200 per month. At this time there was a debt of only $2,200 against the appellees' farm, and appellant represented to them that he had made arrangements with Dr. Hemphill, who at that time had a loan of about $1,500 secured by a mortgage on the farm, that he (Hemphill) would make an additional loan of 17 or 18 hundred dollars, bringing the amount of indebtedness on the farm up to $4,000, the payment of which Cargile would assume. The appellees would obtain in exchange for their farm the property in El Dorado and the 17 or 18 hundred dollars in cash. There was evidence further tending to show that the appellees relied upon these statements of the appellant, and that these induced them to sign the contract; that soon thereafter they discovered that the property in El Dorado was not

being rented for $200 per month, but for about $100, and that Hemphill had not agreed with the appellant that he would make the additional loan, but, although approached by the appellant for that purpose, stated that he would not do so.; and that upon discovery of these facts the appellees declined to complete the transfer under the terms of the contract or to pay the appellant his commission.

A real estate broker owes to his principal the utmost good faith and loyalty, and he may not by deception or fraud induce his principal to enter into a contract for the sale of the principal's property and claim his commission although he has procured a prospective purchaser who is ready, willing and able to buy from.the principal on the latter's terms. *Taylor* v. *Godbold,* 76 Ark. 395, 88 S. W. 959; *Reich* v. *Workman,* 110 Ark. 140, 161 S. W. 180; *Worthen* v. *Stewart,* 116 Ark. 294, 172 S. W. 185; *Lasker-Morris B. & T. Co.* v. *Jones,* 131 Ark. 576, 199 S. W. 900; *Wright* v. *Bennett,* 150 Ark. 154, 233 S. W. 1089; *Davis & Metcalf* v. *Haley,* 157 Ark. 232, 247 S. W. 1052; *Carnahan* v. *Lyman Real Estate Co.,* 170 Ark. 519, 280 S. W. 5.

The testimony raises an issue of fact within the rule announced, and presents a case for the determination of a jury. The judgment is therefore reversed, and the cause remanded for a new trial.