BALSER *v.* RAMSEUR.

4-7725                                      189 S. W. 2d 785

Opinion delivered October 22, 1945.

*E. C. Thacker* and *Hebert & Dobbs,* for appellant.

*Wootton & Land,* for appellee.

SMITH, J.   Appellee sued and recovered judgment for a broker's commission alleged to have been earned upon the sale of real estate in the city of Hot Springs, owned by appellant.   The case was submitted under an instruction which, in effect, directed a verdict for appellee, as the facts upon which it was hypothecated as to conditions under which the commission would be earned are undisputed.   The instruction reads in part as follows: ". . . if the jury believe from a preponderance of the evidence that the plaintiff did procure a purchaser for the property, and took him to the property and showed it to him, and that as a result thereof, the purchaser bought the property from the defendant, then the defendant would be due the plaintiff his commission in accordance with their contract."

The facts are undisputed that appellee was given an agency to sell the property.   The agency was not exclusive, but it had not been terminated.   Appellee contacted one Douglass, and interested him in the purchase of the property, and Douglass subsequently bought it. This apparently makes a *prima facie* case entitling the agent to his commission, and if there were no other facts to be considered, the instruction from which we have quoted would be a correct declaration of law.   In other words, a directed verdict would have been proper.   But there are other facts which must be taken into account. They are as follows:

Appellee was asked: "Was anything said about bringing a purchaser to him—Balser (appellant)?" Appellee, the agent, answered: "I think what he meant was if I produced a purchaser he would take care of me as to commissions as to a definite price."   This testimony refers to the contract under which the agency was created.   While this testimony did not mean that appellee would produce and introduce the purchaser to appellant, it did mean that appellee would advise appellant when

he had found a purchaser for the property, or one who was about to purchase.

Appellee testified that he took Douglass to the property to show it. Appellant was not at home (this apparently being the property in question) but his daughter was. Appellee explained to Douglass that his time was limited, as he had an appointment in Little Rock, but that he had time to show the property. When they arrived at the property the daughter stated that her father (appellant) was not at home. It was then about 12:30 p. m. Appellee explained his mission to appellant's daughter, and made an appointment with Douglass to return at 2:00 p. m. and told the daughter that he would return at 3:00 p. m. He left his business card with appellant's daughter. Appellant testified that he knew nothing of this visit. Douglass did not keep this engagement, nor did appellee keep it, at least he did not testify that he had, and appellee apparently did nothing further about the matter until he read a news item stating that the property had been sold, and two weeks after the date of the sale he called on appellant and demanded his commission. This being refused he brought this suit.

Between the time Douglass was shown the property by appellee, and the date of the engagement appellee had made to return at 3:00 p. m., and inspect the property, Douglass contacted appellant. He did not tell appellant that appellee had shown him the property, and appellant testified that he was unaware of that fact. Douglass testified that appellant told him he had given one Ferguson, another real estate agent, the exclusive agency to sell the property, and they went to the office of Ferguson, where the sale was consummated.

Of course, if Ferguson had the exclusive agency to sell the property, for a fixed period of time, he would have been entitled to the commission for a sale made within that time, whether made by himself or some other agent. Appellant was asked if he paid a commission to Ferguson, but an objection to the question was sustained, and it was not answered. But the payment of the commission to Ferguson would not of itself defeat appellee's

right to recover a commission, if he were otherwise entitled to it. An owner might so contract that he would be required to pay more than one commission, and it is insisted that appellant incurred that liability, even though he in fact paid the commission to Ferguson.

Not having given appellee an exclusive agency, appellant had the right to confer an agency upon another broker, in which event it was his duty to stand impartial between these agents, and to pay a commission to appellee if he first produced a purchaser.

Appellant requested an instruction reading as follows: "You are instructed that if you believe from the evidence that it was of interest and importance to the defendant (appellant), Frank Balser, to be notified by the plaintiff (appellee), W. H. Ramseur, that plaintiff had produced or found a probable purchaser for the property in question, in that defendant might suffer injury or loss by reason of not receiving such notice, and the plaintiff failed to so notify the defendant, then it will be your duty to find that the defendant is not liable for any commissions to the plaintiff."

This instruction, and others to the same effect, were refused. We think these instructions should have been given, and that it was error to refuse them.

Notwithstanding the fact that appellee had an agency to sell the property, he had no exclusive right to do so, and appellant could have sold it personally, or through an agent, but he must have done so before appellee made the sale or advised that he was about to close it.

There is a question of fact which we think the record presents, and that is whether appellant was advised that appellee had procured a purchaser prior to closing with Douglass. If appellant had that information he did not stand impartial between his agents. If he was advised that appellee had produced and procured Douglass as a purchaser before permitting another agent to sell, he is liable to appellee for the commission, although he may also have paid or be liable to pay Ferguson a commission under his exclusive agency.

It is admitted that appellee had a contract with appellant authorizing appellee to sell appellant's property, and it is admitted also that the property was sold to the purchaser produced by appellee. This being true, appellant is liable for the commission if he was so advised before permitting Ferguson to make the sale.

Both parties cite and rely upon the case of *Reich* v. *Workman,* 110 Ark. 140, 161 S. W. 180. The headnote in this case reads as follows: "Real Estate Brokers—Right to Commission.—When W. entered into a contract with R. to sell R.'s land, the contract providing that R. might sell the land himself, and W. was to receive a commission only if he was instrumental in making the sale. Held, where W. interested one P. in the purchase of the land, and P. later purchased directly from R. without R. knowing that he had previously negotiated with W., that W. is entitled to his commission on the sale, W. having been instrumental in procuring the sale."

The decision in that case turned upon the correctness of an instruction reading as follows: "The fact that plaintiff did not notify the defendant that he was trying to sell to Potts is not a matter to be considered by you against him. The contract did not require such notification—the only question is, did the plaintiff cause the trade to be made in any way."

Reich was the owner, Potts was the purchaser, and Workman, referred to as the plaintiff, was the agent. The opinion recites that: "The contract between Workman and Reich did not preclude Reich from himself making the sale of the land, but the contract provided that Workman would be entitled to his commission, provided he was instrumental in making the sale." The controlling question of fact in that case was whether Workman, the agent, was instrumental in making the sale, and the effect of that opinion was that if Workman was instrumental in making the sale, he was entitled, under the terms of his agency contract, to his commission, although the agent had not communicated to Reich, the owner, that Potts was the probable purchaser of the land. The opinion states that: "It was not of any in-

terest to him (Reich), the owner, to know that Potts was the probable purchaser of the land; nor can it be said that he even suffered any injury from the fact that Workman did not state to him that Potts was interested in purchasing the land.'' In other words, the rights of the parties were determinable by the provisions of the contract under which they operated, but the implication of the opinion is that the owner should have been advised that Potts was the probable purchaser, if that information had been of interest to the owner.

Here the information whether appellee had procured the purchaser was of vital interest to appellant. If appellant had that information before closing the deal through Ferguson, he is liable for appellee's commission, although he may have paid, or be liable to pay a commission to Ferguson; otherwise not. Stated otherwise, appellant had the right to sell through his own effort or through the agency of a broker, other than appellee, provided he did so before being advised that appellee had a purchaser ready, willing and able to buy under the terms of the agency contract.

The judgment will, therefore, be reversed and the cause remanded with directions to submit this issue to the jury.