GRAHAM *v.* REMMEL.

Opinion delivered June 24, 1905.

PROMISSORY NOTE—CONDITION IN PAROL.—In a suit on a note executed in payment of the first premium of a policy of insurance it is competent in defense to prove by parol evidence that the note was executed on condition that it should not be binding unless the policy, when it arrived, was satisfactory.

Appeal from Jackson Circuit Court.

WILLIAM L. MOOSE, Judge.

Reversed.

H. L. Remmel sued the firm of Graham Brothers, consisting of Henry C., J. R., T. J., Nimrod, Nathan, Josephus S. and James Graham, on the following note:

"Tuckerman, Ark., Feb. 27, 1902.

"On the delivery, or thirty days thereafter, of a joint life policy of the sum of thirty-five thousand dollars ($35,000), on the ten-year distribution plan, in the Mutual Life Insurance Company, of New York, on the lives of Henry C. Graham, J. R. Graham, T. J. Graham, Nimrod Graham, Nathan Graham, Josephus S. Graham and James Graham, known as the Graham Brothers, we promise to pay to the order of H. L. Remmel the sum of four thousand seven hundred and fifty-three and seventy-hundredths dollars ($4,753.70). Should the policy not be issued, then this obligation to be null and void.

(Signed.)                              "GRAHAM BROTHERS."

Plaintiff recovered judgment, from which defendants appealed.

*John W. & Joseph M. Stayton* and *Morris M. Cohn,* for appellants.

*Rose, Hemingway & Rose* and *S. D. Campbell,* for appellee.

HILL, C. J. In Jackson County there were seven brothers, named Graham, engaged in mercantile and farming business, and all in prosperous condition; and it developed in argument of the case at bar that they were each over six feet tall—fine specimens of Arkansas manhood. Mr. H. L. Remmel, the general manager in the State of one of the large insurance companies, knowing them, and recognizing the advantage to his company of securing a policy on the joint lives of these gentlemen, undertook personally to secure such a policy, and to that end visited them. The result was, an application was signed for a $35,000 policy on the lives of the seven Grahams, and a note for $4,753.70, payable to Mr. Remmel, was executed and delivered to him. Later, a ten-year distribution plan for $35,000 was sent to the Grahams.

It was not accepted, and negotiations were had between Mr. Remmel and some of them looking to the securing of a different policy than the one sent. Mr. Remmel tried to get the one desired, and failed, and tendered a policy according to what he claims was the contract when the note was executed, and, on the refusal of the Grahams to accept it, he brought suit on the note.

The testimony of Mr. Remmel is to the effect that an absolute agreement was reached when the application was signed and the note executed, and the policy tendered as in full and complete fulfillment of the contract as called for in the note, which will be set out in the statements of facts by the Reporter. Mr. Remmel was supported in his statements by a letter written to him during the negotiations for the different policy, in which Graham Brothers stated: "Will say we are pleased with contract, and have no objection whatever, but would like to have it changed the five-year distribution plan, as we have changed our minds on taking it on the plan applied for." They explain this letter by saying that it was dictated by Mr. Remmel himself to their attorney. This is admitted; and they further say it was written merely to facilitate Mr. Remmel in his effort to obtain from his company the policy they desired.

The court excluded evidence offered by the appellants contradictory of Mr. Remmel's as to the execution of the note. The record reads as follows:

"The defendants thereupon offered to prove by Thomas Graham that the plaintiff requested that they execute the note; that it might be necessary to attach the note to the application to show their good faith, but would not be binding upon them, except that, if the policy when it arrived was satisfactory, and they accepted it, the note would be binding; otherwise it would be void. This was a condition which went with its execution. The evidence so offered having been ruled out, defendants excepted."

Several other Grahams were offered on the same point. The court directed a verdict for Mr. Remmel on the note sued upon, judgment was rendered accordingly, and the Grahams have appealed.

The appellee relies upon *Findley* v. *Means,* 71 Ark. 289, and the authorities therein cited, to sustain the action of the circuit court in excluding this testimony. The syllabus of that case is as follows: "A deed, note or other instrument of writing delivered to the grantee or obligee to take effect when certain conditions are performed becomes operative and binding from the time of delivery, though the conditions be not fulfilled." The authorities cited are *Pope* v. *Latham,* 1 Ark. 66; *Inglish* v, *Breneman,* 5 Ark. 377; *Scott* v. *State Bank,* 9 Ark. 36; *Chandler* v. *Chandler,* 21 Ark. 95; *Campbell* v. *Jones,* 52 Ark. 493. With the exception of *Chandler* v. *Chandler,* all these cases were cases of escrow, where the point decided was that there could be no delivery in escrow to the obligee of a bond, note or other written instrument. *Chandler* v. *Chandler* holds that where a bond or other writing is delivered conditionally to the obligee himself, it is operative and binding from the time of the delivery, though the conditions be never performed; and to the same effect is the ruling in *Findley* v. *Means.* The technical character of an escrow is not mentioned in these two cases. Where conditions subsequent are to be performed in order to render the note or bond operative, and when operative the written instrument is expressive of the entire contract, then it must be delivered to a third person, or the delivery to the obligee in escrow will be a good delivery, and the instrument cannot be contradicted by parol varying its terms. It is a completed contract, subject to conditions subsequent not in writing. But where the delivery would defeat the real contract between the parties, then it is competent to prove by parol (1) the whole contract, and that the writing was only part of the contract, or (2) to explain the consideration, or (3) to show that it was part of the contract that the writing was delivered, but not to become operative until another part of the contract—condition precedent—was fulfilled. Of the first class is *Kelly* v. *Carter,* 55 Ark. 112, where a deed did not evidence the entire contract, and parol evidence was admitted to show the entire contract. Of the second class is the recent case of *St. Louis & N. Ark. Rd. Co.* v. *Crandell,* 75 Ark. 89, where the authorities in this State are cited to show that the consideration is, under certain circumstances, open to parol proof, not to defeat, but to effectuate the real contract;

and of the third class is *State* v. *Wallis,* 57 Ark. 64, and *Ware* v. *Allen,* 128 U. S. 590, which is approved in *State* v. *Wallis.* In *State* v. *Wallis,* Mr. Justice HEMINGWAY, speaking for the court, said: "Proof that such of the defendants as subscribed the bond did so upon the condition that other persons named in it as sureties would sign it was not incompetent. It was not designed to vary the terms of a written instrument, but to show that there never was a complete execution of such instrument. For this purpose it was competent. *Ware* v. *Allen,* 128 U. S. 590." In *Ware* v. *Allen,* the Supreme Court of the United States held: "Parol evidence is admissible, in an action between the parties, to show that a written instrument, executed and delivered by the party obligor to the party obligee, absolute on its face, was conditional, and was not intended to take effect until another event should take place."

Following *Ware* v. *Allen,* the Supreme Court of the United States, in *Burke* v. *Dulaney,* 153 U. S. 228, carried the application of the doctrine into a case identical in principle and analogous in fact with the one at bar. Mr. Justice HARLAN, for the court, said:

"And the evidence offered by the appellant, and excluded by the court, did not in any true sense contradict the terms of the writing in suit, nor vary their legal import, but tended to show that the written instrument was never, in fact, delivered as a present contract, unconditionally binding upon the obligor according to its terms from the time of such delivery, but was left in the hands of Dulaney, to become an absolute obligation of the maker in the event of his electing, upon examination or investigation, to take the stipulated interest in the property in question. In other words, according to the evidence offered and excluded, the written instrument, upon which this suit is based, was not—except in a named contingency—to become a contract or promissory note which the payee could at any time rightfully transfer. Evidence of such an oral agreement would show that the contingency never happened, and would not be in contradiction of the writing. It would prove that there never was any concluded, binding contract, entitling the party who claimed the benefit of it to enforce its stipulations. The exclusion

of parol evidence of such an agreement could be justified only upon the ground that the mere possession of a written instrument, in form a promissory note, by the person named in it as payee is conclusive of his right to hold it as the absolute obligation of the maker. While such possession is undoubtedly *prima facie*—indeed, should be deemed strong—evidence that the instrument came to the hands of the payee as an obligation of the maker, enforcible according to its legal import, it is open to the latter to prove the circumstances under which possession was acquired, and to show that there never was any complete, final delivery of the writing *as the promissory note of the maker,* payable at all events and according to its terms. The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But the rule has no application if the writing was not delivered as a present contract."

After citing many authorities supporting these views, the court concluded:

"For the reasons stated, and without considering the case in other aspects, we are of the opinion that it was error to exclude the evidence offered by the defendant tending to show that the writing sued on was not delivered to or received by Dulaney as the promissory note of the defendant, binding upon him as a present obligation, enforcible according to its terms, but was delivered to become an obligation of that character when, but not before, the defendant examined and, by working them, tested the mining properties purchased by the plaintiff, and elected to take the stipulated interest in them. According to the evidence so offered and excluded, the writing in question never became, as between Burke and Dulaney, the absolute obligation of the former, but was delivered and accepted only as a memorandum of what Burke was to pay in the event of his electing to become interested in the property, and from the time he so elected, or could be deemed to have so elected, it was to take effect as his promissory note, payable according to its terms. His election within a reasonable time to take such interest was made a condition precedent to his liability to pay the stipulated price. The minds of the parties never met upon any other basis,

and a refusal to give effect to their oral agreement would make for them a contract which they did not choose to make for themselves."

Following these authorities, and approving the reasoning in *Burke* v. *Dulaney,* above quoted, the court is of opinion that the circuit court erred in excluding the evidence offered and directing a verdict. The evidence raised an issue of fact determinable by a jury.

The judgment is reversed and cause remanded.