BARR CASH & PACKAGE CARRIER COMPANY *v.* BROOKS-OZAN

MERCANTILE COMPANY.

Opinion delivered March 25, 1907.

EVIDENCE—WRITTEN CONTRACT—PROOF OF PAROL CONDITION.—Parol evidence is admissible to prove that a written contract was executed upon condition that it was not to be a complete contract until certain precedent conditions had been fulfilled.

Appeal from Nevada Circuit Court; *Joel D. Conway,* Judge; affirmed.

STATEMENT BY THE COURT.

The appellant sued the appellee on a written contract whereby it was agreed that appellant should erect for appellee a system of five stations of cash and package carriers. The contract provides that, on certain terms and for a consideration named, the appellant should lease to the appellee for five years a system of five stations of cash carriers, and should place the same in good working order in the store room of appellee within fifteen days after April 23, 1903, the date of the contract. It is alleged that appellant in accordance with the contract shipped

to appellee on April 27, 1903, by express, the system of carriers and sent to Prescott an agent to install same in appellee's store. The appellee informed appellant's agent that appellee was not then ready for the stations to be erected. That on September 21, 1904, appellee wrote appellant that arrangements had been completed whereby the stations could be erected, and informed appellant that six or seven stations were wanted, instead of five, and requested appellant to send its representatives for the purpose of erecting the stations. That appellant sent its agent on the 24th of October, 1904, in response to appellee's request, but appellee again refused to allow appellant to erect the stations according to the contract. That appellant, by reason of the breach of contract on the part of appellee, was damaged in the way of expenses incurred and rents accrued in the sum of $280, for which it prayed judgment.

The appellee answered as follows: "First. It denies that it made the agreement with the defendant set out in the complaint, but alleges the truth to be that the representative of the plaintiff came to Prescott and sought to make a contract with defendant to install a cash carrier in the building occupied by the defendant, and was informed by the defendant that it, the defendant, was not ready to have the same installed until it could be known whether it would occupy only the one room it then occupied, or could get the store room adjoining. The representative of the plaintiff then proposed that he would make a plan and take the measurements for that room as he was present on the ground, and that they could execute the contract for that room and hold it until the defendant ordered the carrier shipped, and that, with the distinct understanding that the said contract was to remain in escrow and not be delivered, the same was signed but was never delivered except conditionally. Therefore the defendant denies that it ever executed the said contract. Defendant admits that on or about September 21, 1904, it wrote plaintiff that it was ready to have said carriers installed, but that plaintiffs refused to erect the same unless it could be permitted to erect the carrier it had shipped to Prescott, which it admitted could not be used. Defendant denies that plaintiff has in any manner complied with its contract, and denies that plaintiff has been damaged in any sum by reason of any default

of the defendant, or that it is liable to plaintiff for any sum. Wherefore defendant prays that plaintiff take nothing by this action and for all proper relief."

A general demurrer was interposed to the answer, which was overruled; appellant saving its exceptions. The alleged contract was as follows:

"ARTICLE OF AGREEMENT

Made this 23d day of April, 1903, between the Barr Cash and Package Carrier Company, of Mansfield, County of Richland, State of Ohio, lessor, and Brooks-Ozan Mercantile Company of Prescott, State of Arkansas, lessee:

"Witnesseth: That the lessor, in consideration of this agreement and payments hereinafter contained, leases to the lessee, for the term of five years, a system of five stations of the Barr Cash Carriers, and agrees to place the same in good working order in the store room of the lessee, situated in Prescott, Arkansas, within fifteen days (unavoidable delays in manufacturing or otherwise excepted) after the approval of this contract.

"Payment of rentals as follows: First sixteen dollars per station, payable sixty days after erection of carriers, being rent in advance for first year. And in each of the following four years, on the date of the erection of the lines, the sum of eighty dollars, being each year's rent payable in advance. In the further continuance of this lease the yearly rental shall be the same in amount as in the foregoing years, and payable at like yearly date. If the lessee shall remove from his present place of business to another, the removal of said system of carriers shall be made by the lessor at the expense of the lessee. Changes and alterations in said system of carriers after the plan of location has been accepted by the lessee shall be at the expense of the lessee. Any additional stations placed for the lessee when said system is being erected shall be included in this lease at the same rate.

"In case the store of the lessee, together with said Cash or Package Carriers, shall be wholly or partly destroyed by fire or other unavoidable casualty, said carriers shall be restored by the lessor at his own expense, and the period during which the use of said carriers is lost to the lessee by such casualty shall be added to the term of this lease.

"The lessee agrees to afford the lessor friendly aid and assistance in erecting said system, and also agrees to use due care in operating and keeping the machines in order.

"The lessor agrees, upon receiving proper notice from lessee, to furnish free such parts as are necessary to keep said system in repair, providing rental is paid in accordance with terms of agreement and said repairs are not made necessary by lessee's careless or improper use of the carriers; otherwise the parts furnished shall be at the expense of the lessee.

"The lessees bind themselves or their legal representatives to take the above described system and to pay the money on or before the time and in such manner as is specified. In case of any defects in the material the lessor is to supply new parts without charge. The lessor agrees in every way to defend said lessee from all damages or cost which may arise from suits for infringement. It is also understood that no warranty or verbal understanding or agreement of any kind exists in relation to this contract, other than what is herein expressly stated. And it is further agreed that the title of ownership and the right of possession of said system shall remain in and with the lessor until all payments of principal and interest are fully paid, and until the title thereto has vested in the lessee in accordance with the terms of this agreement; and in case of default in payment of any part of the amount when due the lessor shall have the right to enter the premises and take possession of said system without process of law.

"No payment to be made to agents, except on written authority of the company.

"Contract not binding until approved by one of the executive officers of the company.

"In witness whereof the parties hereunto have subscribed this agreement the day and year above written.

"*The Barr Cash & Package Carrier Co.*,
"L. B. Bethards, Agent.

"*Brooks-Ozan Mercantile Co.*,
"J. T. Brooks, Pres."

On the back of said agreement is the following option of purchase:

"OPTION OF PURCHASE.

"April 23, 1903.

"It is hereby agreed that, should the Brooks-Ozan Mercantile Co. desire to purchase the carrier leased them this day, they can do so at any time by paying for them at the rate of $40 per line; and it is further agreed that any rents paid in the sixty days preceding the date of the purchase payment may be applied on said purchase.

*"The Barr Cash and Package Carrier Co.,*

"L. B. Bethards, Agent."

Appellant adduced evidence tending to show that the contract was executed as alleged in the complaint, and that it complied with the terms of the contract on its part by shipping the system of carriers and by sending its agent to erect same according to the terms of the contract; that appellee refused to allow appellant to erect the system of carriers according to contract, claiming that it was not ready, and refusing to permit appellant to erect the system except upon plans not embraced in, and not contemplated by, the written contract.

Appellee admitted signing the alleged contract, but testified that it was not to be delivered until appellee ordered it.

Appellee further proved over objection of appellant that it explained the situation to appellant's agent at the time the alleged contract was signed, showing that the system of carriers would have to be erected upon a plan that did not then exist, that appellee was contemplating some changes in its store room, and that the system of carriers would have to be erected to conform to these changes, and that appellant's agent understood that these changes would be made, and that the carriers should be erected in accordance therewith. Appellee testified that, after the situation of the store room as it would stand when the changes contemplated were effected was explained to appellant's agent, he said: "Let me make a representative plan of the store as it will stand," and he asked how many stations in each room, and when told said: "Let me make a representative plan showing the exact status, and whenever you want your carrier order it, and it will come, but it will not be shipped until desired." Appellee further testified: "That was the contract, that the carrier was to be shipped at its direction, and it would be erected

as desired by appellee." Appellee did not instruct appellant's agent to come to Prescott, and never wrote him that appellee was ready for the carrier. The appellant duly excepted to the ruling of the court in admitting the above testimony.

The court instructed the jury at the instance of appellant as follows:

"The jury is instructed that if you find from the evidence that the Barr Cash & Package Carrier Company and the Brooks-Ozan Mercantile Company made and delivered a written contract whereby the former was to erect a system of cash and package carriers in the store house of the latter, the same to be leased for a term of five years at an agreed price, and that the Brooks-Ozan Mercantile Company refused to allow the Barr Cash and Package Carrier Company to erect said carriers according to contract without fault on the part of the plaintiff, the said Brooks-Ozan Mercantile Company is liable for damages caused by not allowing the carriers to be erected and for the rent according to contract price for the time the Barr Cash & Package Carrier Company were out of the use of said carriers which were to be erected. The amount of the damages and the amount of the rent due are to be determined by you from the evidence."

Another instruction as to the measure of damages in case the jury found breach of contract was given, which need not be set out. At the instance of appellee the court gave the following:

"You are instructed that if you find from the evidence that the contract relied upon by the plaintiff was signed to be held by plaintiff until the exact number and kind of carriers could be determined, and that before this was done the plaintiff in violation of said agreement shipped a carrier that could not be used in said building, and that the same has never been put up or used, your verdict should be for the defendant."

Appellant objected, and duly excepted to the ruling of the court in giving this instruction. The verdict was in favor of appellee. Motion for new trial, assigning for errors the ruling to which exceptions were taken, was filed and overruled. This appeal followed.

*H. B. McKenzie,* for appellant.

1.  The appellant's demurrer should have been sustained, because the answer set up a different contract from the one sued on, which, being in writing, could not be varied or added to by parol evidence.  54 Ark. 525; 67 Ark. 62; 17 Cyc. 471; 11 Am. & Eng. Enc. of L. (2 Ed.), 548; 9 Ark. 501; 15 Ark. 543; 24 Ark. 201; 33 Ark. 150; 45 Ark. 177; 61 Ark. 81; 71 Ark. 185.  In order to admit parol evidence of collateral agreements relating to the same subject-matter as a written agreement between the same parties, it must appear that the writing was not intended to embrace the entire agreement.  17 Cyc. 716. "A contractor must stand by the words of his contract; and if he will not read what he signs, he alone is responsible for his omission."  91 U. S. 50; 71 Ark. 185.

2.  The contract was not an escrow, having been delivered directly to the representative of appellant.  11 Am. & Eng. Enc. of L. (2 Ed.) 337; 52 Ark. 493.

*McRae & Tompkins,* for appellee.

The opinion of this court in 76 Ark. 140 is a complete answer to and refutation of appellant's contentions.

WOOD, J. (after stating the facts.)  In *Ware* v. *Allen,* 128 U. S. 590-95 Mr. Justice Miller, in speaking for the court, said: "We are of the opinion that this evidence shows that the contract upon which this suit is brought never went into effect; that the condition upon which it was to become operative never occurred, and that it is not a question of contradicting or varying a written instrument by parol testimony, but that it is one of that class of cases, well recognized in the law, by which an instrument whether delivered to a third person as an escrow, or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or to be ascertained thereafter."  In *Burke* v. *Delaney,* 153 U. S. 228, it is held that: "In an action by the payee of a negotiable promissory note against the maker, evidence is admissible to show a parol agreement between the parties, made at the time of the making of the note, that it should not become operative as a note until the maker could examine the property for which it was to be given, and determine whether he would purchase it."  These cases are cited and quoted from at length in the recent case of *Graham* v. *Remmel,* 76 Ark. 140, where Chief Justice HILL, speaking for the court, announced

the doctrine that where the delivery of an instrument "would defeat the real contract between the parties, then it is competent to prove by parol (1) the whole contract, and that the writing was only part of the contract, or (2) to explain the consideration, or (3) to show that it was part of the contract that the writing was delivered, but not to become operative until another part of the contract—condition precedent—was fulfilled." The doctrine of the above cases rules the case at bar, and determines the correctness of the rulings of the trial court which appellant urges here to reverse the judgment. See also *State* v. *Wallis,* 57 Ark. 64. The proof on behalf of appellee tended to show that the contract was not to be a completed contract until certain precedent conditions in regard to the arrangement of the store had been fulfilled; and when these were consummated, appellee was to make the order for the carriers under the contract. Then, and not until then, as this testimony on behalf of appellee tended to show, was the contract to be delivered and to take effect.

Affirm the judgment.