TAYLOR *v.* ERMEN.

Opinion delivered February 23, 1931.

*Bruce Ivy,* for appellant.

*James G. Coston* and *J. T. Coston,* for appellee.

BUTLER, J. This suit was brought by the appellant to enforce the statutory liability of stockholders of insolvent banks as fixed by § 702 of Crawford & Moses' Digest. Appellant alleged that the Citizens' Bank of Osceola became insolvent on the 5th day of January, 1928, at which time the appellee was the owner of sixty shares of the corporate stock of said bank of the par value of $1,500; that, as Bank Commissioner, he made an assessment of 100 per cent. against all the stockholders and against the appellee who failed and refused, after demand made, to pay the assessment, and that, by reason

of said assessment and appellee's failure to pay, appellee became, and is, indebted to the appellant as Bank Commissioner in the sum of $1,500, for which judgment was prayed. The appellee answered admitting all the allegations of the complaint except that which alleged ownership in him of the sixty shares of stock. This he denied, and testimony was heard, and the case submitted to a jury on that issue. The verdict was for the defendant, and from the judgment of the court based thereon is this appeal.

The following facts appear to be undisputed: First, the appellee, during the year 1927 and on the 5th day of January, 1928, was shown by the bank's records to be the owner of the sixty shares of stock. During the year 1927, and for many years prior thereto, he was and had been, a director of the bank, punctual in his attendance on all of the directors' meetings, with knowledge of the loans made, and giving at each monthly meeting his approval of the loans made for the month next preceding. He took part at such directors' meetings in the discussions regarding the affairs of the bank with his fellow directors, and with the bank examiner, from time to time as examinations were being made of the condition of the bank. He attended the last meeting of the board of directors that was held before the doors of the bank were closed on January 5, 1928. He drew a monthly salary as director, two of his last salary checks being drawn and delivered to him in the month of December, 1927.

Second, on the 6th day of May, 1927, he made a written assignment of his certificates of stock in blank and delivered them to A. J. Baber, but did not notify the president and cashier of the bank, or either of them, of this action on his part, nor was there any notation of this assignment made upon the books of the bank. Baber presumably had possession of these certificates of stock from that time until December 29, 1927, when he in turn, for a consideration of $900 to be paid, assigned the said

certificates to B. R. Moore who executed notes the first of which was due in three months. These notes were delivered to the appellee by Baber on the following day. At the time or shortly after the bank closed, Moore notified the appellee that the purchase of stock by him was made under certain conditions which were not carried out, and that he would not pay the notes or any of them. This suit was filed on the 28th day of December, 1928, but the appellee had taken no action to enforce the payment of the notes up to and including the date of the hearing of this case in the circuit court.

It is insisted by the appellant that under the facts in this case the appellee is liable, first, because he did not sell his stock; second, that the sale, if made, was with the knowledge that the bank was insolvent, and that it was not made in good faith but to escape his statutory liability; third, that because of his peculiar relation to the bank and the bank's condition before and at the time of the purported sale, the same would be ineffectual to relieve appellee of liability because the stock was not transferred on the books of the bank and a certificate signed by the president and cashier deposited with the county clerk of the county in which the bank was located.

Appellee testified that he did not know the failing condition of the bank at any time during the year 1927, and that the sale was not made for the purpose of avoiding his statutory liability, but that he was getting old and was trying to dispose of all the stock that he owned in various corporations, including the bank stock in question; that he assigned the stock to Baber and directed him to dispose of it and left it to his judgment as to terms and price. Appellant insists that, under the circumstances of the case, the appellee cannot be heard to deny knowledge of the condition of the bank, and that all the circumstances of the case conclusively show, notwithstanding appellee's statement to the contrary, that the sale was a mere subterfuge on the part of the appellee to escape liability, and that appellee is not within the

rule laid down in *Taylor* v. *McKennon*, 178 Ark. 223, 10 S. W. (2d) 360, because in that case the undisputed facts show that the stock was sold at a time when the bank was solvent, and there was no suspicion of fraud in the transaction. McKennon was not an officer or director of the bank, and he received full value for his shares of stock, the sale having been made approximately a year and a half before the bank was closed. The court there held that, under those circumstances, McKennon was not liable because the transfer was not made in conformity with § 686 of the Digest.

But it is insisted that the case last cited has no application to the case at bar because of the essential dissimilarity of the facts, both as to the condition of the bank and the relationship that sellers of the stock sustained to the bank; that under the facts in the instant case the law will impute to the appellee knowledge of the condition of the bank, which, considered with the circumstances attending the transfer of the stock by the appellee to Baber and the latter's delay in making the sale, and the price for which the stock was sold, the time of the sale to Moore and the condition of the bank prior thereto conclusively show lack of good faith in the transaction—so much so as to prevent the escape of appellee from liability. There are a number of circumstances appearing in the record which bear upon the contention of the appellant as above stated, which we deem it unnecessary to mention as we prefer to place our decision on the fact that there was, indeed, no completed sale made by the appellee to Baber, or by Baber to Moore, and that appellee was in fact the owner of the stock in question on the 5th day of January, 1928.

Appellee, while stating in answer to a question, that he had made an outright sale to Baber in May, 1927, immediately corrected that statement, and the effect of his testimony was that there was no sale in fact to him but that the transaction was merely to enable Baber to more readily dispose of the stock to another. Therefore, from

May, 1927, down to the 29th day of December, 1927, appellee was the owner of the stock which was assigned to Baber, and which was in his possession only for the purpose of its disposal, and in his dealings with Moore, Baber merely acted as the agent of the appellee, being clothed by the latter with authority to deal with the stock and make such terms with respect to the sale thereof as if he were in fact the owner. So, whatever deal was made by Baber with reference to the sale to Moore would be binding on the appellee. Baber did not testify in the case, there being but one witness who testified regarding the sale of the stock on December 29 to Moore, and that was Moore himself. This testimony was not disputed by any other testimony in the case, and we must accept it as true. According to that testimony, the sale was not to be a completed contract, or the notes executed evidencing the purchase price a binding obligation, unless and until Baber had the necessary certificate of transfer issued by the bank officials and such disposition of it made as to meet the requirements of law and proper record made on the books of the bank. He failed and neglected to comply with any part of this agreement, which was a condition precedent to the completion of the sale of stock.

The rule is that in sales of chattels the intention of the parties shall govern as between them, and they may prescribe the terms upon which a sale shall become a completed transaction and name the conditions which must be met before the same becomes a finality. The test as to whether or not there was a completed sale in this case is, could the appellee under these facts enforce the payment of the notes by Moore, the alleged purchaser of the stock? This court, speaking through Mr. Chief Justice HILL in the case of *Graham* v. *Remmel,* 76 Ark. 140, 88 S. W. 899, 6 Ann. Cas. 167, approved and adopted the rule announced in *Burke* v. *Dulaney,* 153 U. S. 228, 14 S. Ct. 816, where, commenting on the effect of the evidence offered, it was said, it "tended

to show that the written instrument was never in fact delivered as a present contract, unconditionally binding upon the obligor according to its terms from the time of such delivery, but was left in the hands of Dulaney, to become an absolute obligation of the maker in the event of his electing, upon examination or investigation, to take the stipulated interest in the property in question. In other words, according to the evidence offered and excluded, the written instrument, upon which this is based, was not—except in a named contingency—to become a contract or promissory note which the payee could at any time rightfully transfer. Evidence of such an oral agreement would show that the contingency never happened, and would not be in contradiction of the writing. It would prove that there never was any concluded, binding contract, entitling the party who claimed the benefit of it to enforce its stipulations.''. This now seems to be the settled rule. *Barr C. & P. Co.* v. *Brooks,* 82 Ark. 219, 101 S. W. 408; *Kimbro* v. *Wells,* 112 Ark. 132, 165 S. W. 645; *Cochran* v. *Shull,* 115 Ark. 229, 170 S. W. 997; *Inman* v. *Quirey,* 128 Ark. 605, 194 S. W. 858.

Applying this rule to the facts attendant upon the sale as disclosed by the undisputed testimony of Moore, we hold that the sale never became a completed contract, that the notes were void and uncollectable, and that the appellee was the owner of the stock on the date that the doors of the bank were closed, and therefore liable for the assessment made by the Bank Commissioner. It follows that the judgment of the court below is reversed, and the cause remanded for further proceedings in conformity to law and not inconsistent with this opinion.