248 F.2d 268
 CAROLINA CASUALTY INSURANCE COMPANY, Appellant,
v.
Arthur K. HELMS, an Incompetent Person, by Dora Helms Bohon, His Guardian, Appellee.
Arthur K. HELMS, an Incompetent Person, by Dora Helms Bohon, His Guardian, Appellant,
v.
CAROLINA CASUALTY INSURANCE COMPANY, Appellee.
 Civ. No. 15780.
 Civ. No. 15781.
 
 United States Court of Appeals Eighth Circuit.
 October 11, 1957.
 Boyd Tackett, Texarkana, Ark. (Shaver, Tackett & Jones, Texarkana, Ark., with him on the brief) for Arthur K. Helms.
 T. E. Webber, Texarkana, Ark. (Charles Conway, Texarkana, Ark., was with him on the brief) for Carolina Casualty Ins. Co.
 Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 This is a civil action brought to enforce an oral contract for the issuance of a policy of liability insurance. Diversity of citizenship and involvement of the requisite amount form the basis for federal court jurisdiction. The law of Arkansas is controlling. The parties will be referred to as in the court below. Arthur K. Helms, an incompetent person, by Dora Helms Bohon, his guardian, was plaintiff and Carolina Casualty Insurance Company was defendant.
 
 
 2
 On August 12, 1955, G. W. McDonald, as agent for Carolina Casualty Insurance Company, the defendant, entered into an agreement with J. A. Vouk, managing officer of J. A. Vouk Produce Co., Inc., to issue a policy of liability insurance with Carolina Casualty upon a certain truck and trailer. After such oral agreement and on the same day, August 12, 1955, McDonald executed a policy of liability insurance for Carolina Casualty upon the Vouk truck and trailer. The policy was never examined by Vouk. It remained, undelivered, in the possession of McDonald until subsequent to the times with which we are here concerned. The policy as written fixed the effective date thereof as 12:01 o'clock a. m. the 15th day of August, 1955. On August 14, 1955, at approximately 10:15 o'clock p. m., one hour and 46 minutes prior to the effective date of the policy as written, the insured truck and trailer became involved in an accident which resulted in personal injuries to Arthur K. Helms. On September 3, 1955, Helms, by his guardian, filed suit against Vouk in state court and as a result thereof obtained a judgment against Vouk in the amount of $25,000.00. Demand was made upon Vouk to pay the judgment and subsequently a writ of execution upon said judgment was returned unsatisfied, whereupon Helms, through his guardian, commenced this action under the law of Arkansas, which authorizes direct actions against liability insurance carriers in such circumstances. The case was tried to a jury, which returned a verdict in favor of the plaintiff, whereupon defendant instituted this appeal. Plaintiff also appeals, claiming that the lower court erred in failing to assess a statutory penalty and attorney's fees. Act No. 159, Ark.Laws 1955, Ark.Stats.1947 Ann. § 66-514 (Supp.1955).
 
 
 3
 J. A. Vouk testified in behalf of the plaintiff. He lived in North Little Rock, Arkansas, was in the produce trucking business and was so engaged at all times pertinent hereto. On August 12, 1955, his truck was in Rood's Truck Shop for repairs. It had been there for a period of 60 or 70 days. Sometime before noon on Friday, August 12th, McDonald, agent for the defendant, with whom Vouk had done business for years and with whom he had an open account on insurance business and who had assisted him in getting a loan on this particular truck, came by and asked Vouk when he would be ready to go. Vouk told him that he intended to road test the truck that day and instructed him to insure the truck for property damage, public liability, cargo insurance and workmen's compensation, and McDonald said he would do so. Vouk requested liability limits of $10,000.00 and $20,000.00. About 20 minutes after McDonald left, Vouk called him at his office and asked him to increase the liability limits to $15,000.00 and $30,000.00 because some western states in which he apparently intended to operate required that amount. According to Vouk, McDonald said the truck was covered at that time and nothing was said about the following Monday being the effective date of the policy. During the conversation with McDonald it was understood that the Carolina Casualty Company was the company in which the liability insurance would be written.
 
 
 4
 Vouk road tested the truck about two o'clock that afternoon. On Sunday, the following day, Vouk left about 5:30 o'clock p. m. and drove to Texarkana, where he was subsequently involved in the accident with Helms. After the accident, he called McDonald on the telephone, told him of the accident, and asked him what insurance adjuster to contact. McDonald advised him to see Crawford and Company Insurance Adjusters at Texarkana. Vouk claimed that McDonald at that time did not state to him that he had no insurance coverage or that the policy did not go into effect until August 15th. A representative of Crawford and Company began an investigation of the accident but sometime later withdrew insofar as the insurance company was concerned.
 
 
 5
 While the policy written by McDonald was executed on Friday, August 12, 1955, it was not delivered to Vouk and he never saw the policy and accordingly had no opportunity of protesting the alleged error in the effective date thereof.
 
 
 6
 In testifying in behalf of the defendant, McDonald stated that Vouk told him that the truck would go out Saturday night; that he, Vouk, wanted to be able to leave on Monday and he asked him to execute the policy and date it Monday, and that he, McDonald, agreed to execute the policy with Carolina Casualty Company. McDonald stated that Vouk was to come to his office on Saturday morning to execute a premium finance note but that he did not show up. McDonald claimed that Vouk never asked him for the policy and that he mailed the policy to the home office after the accident because they asked for cancellation. He stated that Vouk did call him on the night of the accident and that he told Vouk to call Crawford and Company of Texarkana, but that the following day he advised Crawford and Company that Vouk's insurance was not in effect until August 15, 1955. His testimony, however, was fraught with many contradictions and inconsistencies which unquestionably detracted from the weight gived it by the jury.
 
 
 7
 H. A. Rood, the garage man, testified that a couple of days before the Vouk accident Vouk and McDonald were in his garage; that Vouk told McDonald he was going out and wanted insurance coverage and that Vouk at that time was waiting for them to finish the tractor so he could go out with it.
 
 
 8
 The court instructed the jury that there was but one issue for them to decide — "whether or not J. A. Vouk was covered by liability insurance on August 14, 1955 —". The trial court charged the jury:
 
 
 9
 "The plaintiff contends in that connection that on August 12, 1955 Vouk entered into an oral contract for the issuance of a policy of liability insurance with G. W. McDonald, the defendant's agent at Little Rock, and that it was agreed between them that the insurance coverage was to be effective immediately. While the defendant admits that on August 12, 1955 Vouk and McDonald did enter into an oral agreement for the issuance of a policy of liability insurance, it contends that the agreement was that the insurance was not to become effective until 12:01 A.M. on Monday, August 15, 1955, which is the effective time and date shown on the written policy that has been introduced in evidence."
 
 
 10
 The jury returned a verdict in favor of the plaintiff, upon which judgment was entered.
 
 
 11
 In overruling defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial, the trial court stated:
 
 
 12
 "As finally submitted to the jury, the plaintiff's action was not a suit upon a written policy of insurance or a suit to reform such a policy, but, rather, a suit upon an oral contract for the issuance of a policy of public liability insurance. That the defendant's agent, McDonald, had the authority to enter into such a contract was clearly established by his own testimony when he was recalled to the stand by the Court, if not by his testimony prior to that time, as contended by the plaintiff. And I am satisfied that the plaintiff introduced substantial evidence to the effect that the minds of the parties met on all of the essential elements of such a contract and to the effect that it was agreed between the insured and the defendant's agent that the insurance should take effect immediately; that is to say, on August 12, 1955, rather than on the later date shown in the written policy." (Emphasis supplied.)
 
 
 13
 In the main, defendant contends that there was no substantial evidence of an oral contract of insurance, that the written policy in evidence was the only contract of liability insurance shown to have existed between Vouk and the defendant insurance company, and that plaintiff cannot vary or enlarge the terms of the written policy by parol evidence.
 
 
 14
 There can be no question from the record but what Vouk and McDonald entered into an agreement for the issuance of a policy of liability insurance on Vouk's truck and trailer. The property to be insured, the nature of the coverage and the amount thereof, the amount of the premiums, the duration of the risk and all other details are satisfactorily established. There was but one fact issue upon which there was disagreement — was the insurance to be effective immediately, i. e., August 12th, as claimed by Vouk or on August 15th, as claimed by McDonald? We think it clear that a jury question was presented and that there was substantial evidence from which the jury could conclude that the insurance was to be effective on Friday, August 12, 1955, so as to afford coverage at the time of Vouk's accident on August 14th.
 
 
 15
 Under the law of Arkansas oral agreements to insure are binding. See National Automobile Ins. Co. v. Dalton, 1948, 214 Ark. 120, 214 S.W.2d 507, 508:
 
 
 16
 "Our decisions are in harmony with the general rule that terms of an oral agreement to insure will be enforced if made by a general agent, or on behalf of the Company by one acting within the scope of his actual or apparent authority. Some of the cases are cited in American Casualty Co. of Reading, Pa. v. Rightor, 212 Ark. 779, 207 S.W.2d 736."
 
 
 17
 In American Casualty Co. of Reading, Pa. v. Rightor, supra, the Supreme Court of Arkansas stated at page 739 of 207 S.W.2d:
 
 
 18
 "The applicable rule is stated in 29 American Jurisprudence, page 151, section 135, as follows: `It is generally held that where otherwise valid, oral contracts of or for insurance entered into by general agents or by duly authorized agents acting in such respect within the apparent or ostensible scope of their authority are binding on the insurance company which they represent. * * * An agent authorized to make the necessary surveys and negotiate and conclude all the terms of the contract, and to fill up and counersign policies, may bind his company by a parol contract to issue a policy.'"
 
 
 19
 Defendant argues that "— the essential elements of an oral contract of insurance were not shown by substantial evidence to have been the subject of a meeting of the minds of McDonald and Vouk when they conferred on August 12, 1955. The trial court disagreed with such conclusion and we concur.[1] He stated:
 
 
 20
 "In that connection, there is no question that the insured and the agent agreed on the property to be insured, the nature of the coverage and the amount thereof. As to the amount of premiums to be paid, the insured testified that such amount was agreed upon; and I agree with counsel for the plaintiff in his contention that an agreement as to the amount of the premium necessarily implied an agreement as to the duration of the risk, since the amount of an insurance premium of necessity depends in part upon how long the coverage is to continue. Moreover, the details of the contract, including the amount of premium, the duration of the risk, and the general terms and conditions of the agreement, were shown by the copy of the policy that was introduced in evidence; the fact that the plaintiff introduced such a copy for the purpose of showing the details of the agreement, except the effective date of the coverage which he contended was incorrectly shown, did not convert his action into a suit on the written policy. See Izard v. Connecticut Fire Ins. Co., (1917) 128 Ark. 433 (194 S.W.2d 1032) where it was held that in a suit on an oral contract, a statement in writing is admissable for the purpose of proving the oral agreement." (Emphasis supplied.)
 
 
 21
 Defendant takes the position that the negotiations between Vouk and McDonald became merged into the written contract of insurance and that its terms may, therefore, not be varied by parol evidence. Here, concededly, Vouk never saw or examined the policy until after the filing of this suit, and, as stated by the trial court, there is no showing whatever that Vouk's failure to pick up the policy before commencing his trip was fraudulent, negligent or unreasonable. Accordingly, it cannot be said that Vouk agreed to the policy as written by McDonald. Until actually or presumptively accepted by Vouk, the contract of insurance as written by McDonald was nothing more than the memorandum of McDonald setting forth his views on what he thought was contained in the oral agreement to issue an insurance policy. It so happened that McDonald's memorandum agreed with Vouk's recollection of the oral agreement in all details except as to the effective date of the insurance.
 
 
 22
 Defendant cites a number of Arkansas cases establishing the applicability of the parol evidence rule to insurance contracts. The trial judge, however, pointed out that in the cases relied on by the defendant the policies of insurance had actually been delivered to the assureds and accepted by them.
 
 
 23
 There is no dispute that under Arkansas law where a written contract is plain, unambiguous, and complete in its terms parol evidence is not admissible to contradict, vary or add to the same, but it is also the law of Arkansas that such rule only applies to written contracts that have been finally executed and delivered as complete contracts. See Barr Cash & Package Carrier Co. v. Brooks-Ozan Mercantile Co., 1907, 82 Ark. 219, 101 S.W. 408; Pickler v. Arkansas Packing Co., 1914, 112 Ark. 33, 164 S.W. 764; American Sales Book Co. v. Whitaker, 1911, 100 Ark. 360, 140 S.W. 132, at page 134, 37 L.R.A.,N.S., 91, where the court said:
 
 
 24
 "But parol testimony is admissible to show that a written instrument was not signed or delivered as a concluded contract, but was only signed and delivered, to be held pending the happening of a contingency or the performance of some condition, and that subsequently such contingency did not happen or that such condition was not performed, and therefore that the written instrument did not actually become effective as a completed contract. Graham v. Remmel, 76 Ark. 140, 88 S.W. 899; Barr C. & P. Co. v. Brooks-Ozan Mer. Co., 82 Ark. 219, 101 S.W. 408."
 
 
 25
 We are not here dealing with a situation where oral negotiations have become merged into a written contract which has been executed and delivered. We have only an oral agreement to issue a policy of insurance. The policy was written by McDonald but until delivered and accepted by Vouk it was not a completed instrument. It was upon this theory that the court submitted the case to the jury and no exceptions were taken.
 
 
 26
 We think it clear that if the policy as issued by McDonald had been delivered to Vouk so that he had had an opportunity of examining and did accept it, it could then be said that the oral agreement had become merged in the written contract and the parol evidence rule would have been applicable. That, however, was not the situation and we accordingly find no error in the court's submission of the case to the jury on the theory of an oral contract for the issuance of insurance. We also find that there was substantial testimony upon which to base the jury's verdict. All other matters raised by the defendant in its appeal have been considered and determined adversely to defendant's position.
 
 
 27
 We now turn to the cross appeal of the plaintiff, wherein it is charged that the court erred in refusing to assess statutory penalty and attorney fees. Arkansas Statutes of 1947 Annotated, § 66-514 provides in substance that in all cases where a loss occurs and an insurance company liable therefor has failed to pay within the time specified in the policy after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of such loss, 12% damages upon the amount of the loss, together with reasonable attorney's fees for the prosecution and collection thereof. Under § 66-527 of the Arkansas statutes, Helms, the plaintiff here, was subrogated to the right of the insured. Helms contends that the court erred in refusing to assess the penalty and fees. In so refusing, the trial court referred to the fact that the suit herein was based upon an oral contract for the issuance of a policy of insurance and that accordingly the plaintiff's position was the same as though no policy had ever been written. It relied on Aetna Ins. Co. v. Short, 1916, 124 Ark. 505, 187 S.W. 657. In that case, the Arkansas Supreme Court stated, at pages 659-660 of 187 S.W.:
 
 
 28
 "The statute in terms provides that a written policy must be issued before the attorney's fee, and 12 per cent. penalty can be taxed as costs against the insurance company. Here no policy of insurance was issued by the company. There was only a preliminary contract for renewal, which had not been consummated by filling out and delivering a policy to the plaintiff. Therefore the facts do not bring the plaintiff within the terms of the statute, and he cannot avail himself of its provisions." (Emphasis supplied.)
 
 
 29
 In the cases relied on by the plaintiff written policies or written policies as reformed were involved. Here the plaintiff's recovery is on an oral contract for the issuance of a policy of insurance, not on the policy of insurance which was issued but not delivered. We accordingly hold that the trial court was correct in denying the plaintiff the statutory penalty and attorney fees.
 
 
 30
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 In New Hampshire Fire Ins. Co. v. Walker, Ark., 1929, 178 Ark. 319, 11 S. W.2d 772, cited by the appellant here, the essential elements of an oral contract of insurance and the requirements of proof thereof were outlined at pages 772-73 of 11 S.W.2d as follows:
 "It is first contended by the appellant that, the suit being on an oral contract, the burden was upon appellee to show there was a meeting of the minds as to all of the essential elements of a contract. We agree with this contention of the appellant, but appellant says that the elements as laid down in 1 Cooley's Briefs on Insurance (2d Ed.) p. 534, are (1) the subject-matter; (2) the risk insured against; (3) the amount; (4) the duration of the risk; (5) the premium; * *
 * * * * *
 "On page 535 of the same volume of Cooley's Briefs on Insurance it is stated:
 "`Though it is regarded as essential that all the elements of the contract be agreed upon, it is not necessary that this be done expressly. In Concordia Fire Ins. Co. v. Heffron, 84 Ill.App. 610, it was held that an oral contract of insurance will sustain an action though no express agreement is made as to the amount of premium to be paid or the duration of the policy if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case.'"