**Art KNIGHT, Appellant,**

v.

**INTERCO INCORPORATION, formerly International Hat Company, Appellee.**

No. 88–1778.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1989.

Decided May 2, 1989.

Donald B. Kendall, Fayetteville, Ark., for appellant.

Constance G. Clark, Fayetteville, Ark., for appellee.

Before MAGILL and JOHN R. GIBSON, Circuit Judges, and HEANEY, Senior Circuit Judge.

MAGILL, Circuit Judge.

In the district court,[1] appellant Art Knight sued Interco Incorporation for breach of contract. Knight claimed that Interco terminated him as its manufacturer's representative in New Mexico without giving the thirty days written notice required by their contract. The jury re-

---

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

turned a verdict for Knight and awarded Knight $200 in damages. On appeal, Knight argues that the judgment should be reversed and remanded for a new trial. He contends that the district court erred (1) by applying the parol evidence rule to his testimony concerning alleged oral modifications of the contract, and (2) by failing to give two jury instructions he requested concerning the appropriate measure of damages. We affirm the judgment of the district court.

## I.

In 1978, Art Knight purchased a manufacturer's sales representative's business. For $21,000, he received a list of clients, the commercial goodwill accumulated by his predecessor and the right to sell the products of the American Hat and Mexican–American Hat companies (both were later acquired by Interco) in New Mexico. During the next seven years, Knight sold Western hats to retailers in New Mexico and was paid on commission.

In early 1985, Knight left Interco and joined Lambert Hat Company, one of its competitors. Several months later, Knight was asked to return to Interco. An agent of Interco told him that his position would be the same as it had been before he left and allegedly agreed orally that if Knight chose again to leave Interco, he could sell his business, just as he had acquired it in 1978.

On April 11, 1985, Knight and Interco signed a three-page written agreement. The contract essentially formalized the terms of Knight's previous dealings with Interco. However, paragraph 21 of the agreement indicated that "[e]ither party may terminate this contract by giving thirty (30) days notice in writing to the other party * * *." Despite Interco's alleged oral promises, the contract was silent on the issue of Knight's right to sell his business.

A year later, Knight searched for a buyer to take over his accounts. When he informed Interco that he was negotiating with a prospective buyer, the company insisted on the right to approve Knight's replacement. The attempted sale fell through and Knight continued to sell Interco products in New Mexico. In 1986, Knight moved to Arkansas, but he planned to continue working the New Mexico territory. Knight alleges that Interco gave him oral permission to do so. However, the Vice President of Sales and Marketing for Interco testified that he "absolutely" never gave such assent. Tr. at 146. In fact, Interco insists that it "informed Knight that if he moved to Arkansas, the company would have to find someone else to work the New Mexico territory." Appellee's brief at 4.

While he was relocating to Arkansas, Knight negotiated with a second would-be buyer. Interco refused to approve the buyer and informed Knight on November 26, 1986 that he was no longer their New Mexico sales representative and that his accounts were no longer his to sell. Knight protested that he had been informed that he had permission to sell his business and move to Arkansas. Nevertheless, Interco awarded his territory to a new sales representative.

On June 5, 1987, Knight filed suit for breach of contract in the United States District Court for the Western District of Arkansas. Federal jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332. During the trial, Knight testified that Interco told him that when he retired, he could sell his accounts. Tr. at 54. Counsel for Interco objected that such testimony was impermissible. The court ruled that Knight's testimony concerning Interco's alleged agreement that he could sell his business was barred by the parol evidence rule.

As for the measure of damages, the court instructed the jury to award no damages in excess of the net commissions [2] Knight would have earned during the thirty days notice period if Interco had not breached the contract. Despite Knight's

---

**2.** His net commissions were calculated by subtracting Knight's average monthly expenses from the gross commissions he would have earned during the thirty days notice period.

requests, the court refused to instruct the jury (1) that Knight could be awarded damages for the loss of his right to sell his business, and (2) that Interco could be estopped from relying on the thirty days notice clause to limit Knight's damages. The jury concluded that Interco breached the April 11, 1985 contract because it did not give Knight the required thirty days written notice and awarded damages for Knight's lost net commissions.

## II.

Knight's first contention on appeal is that the district court erred in ruling that the parol evidence rule barred him from testifying that Interco orally promised that he could sell his business. Knight claims that on numerous occasions (before and after the signing of his contract), Interco reassured him that he could sell his business, provided that Interco approved his replacement. The court deemed all testimony to that effect inadmissible under the parol evidence rule.

The parol evidence rule states that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Corbin on Contracts*, Ch. 26, § 573, p. 357. *See generally Faver v. Faver*, 266 Ark. 262, 583 S.W.2d 44 (1979); *Sterling v. Landis*, 9 Ark.App. 290, 658 S.W.2d 429 (1983). Arkansas courts have consistently held that "where a contract is plain, unambiguous and complete in its terms, parol evidence is not admissible to contradict or add to the written document." *Brown v. Aquilino*, 271 Ark. 273, 608 S.W.2d 35, 36 (1980) (citing *Carolina Casualty Insurance Co. v. Helms*, 248 F.2d 268 (8th Cir. 1957)); *see also City of Crossett v. Riles*, 549 S.W.2d 800 (1977). The purpose of the parol evidence rule is to enhance the stability of written contracts. *See Hoffman v. Late*, 222 Ark. 395, 260 S.W.2d 446, 447 (1953) (quoting Wigmore on Evidence).

Knight insists that the district court was incorrect to apply the parol evidence rule (which is inaptly named since it is a substantive, not evidentiary, rule that applies to both parol and written proof, *see Corbin* at 358). Specifically, he asserts that his testimony concerning Interco's alleged oral promises should not have been barred because:

(1) he wished to testify concerning a *subsequent*, not prior or contemporaneous, oral agreement;

(2) the barred testimony *would not vary or contradict* the written agreement;

(3) parol evidence is permissible to reveal the *real consideration* behind a written agreement if it does not contradict the agreement; and

(4) the barred testimony pertained to a *separate agreement*.

The record reveals that under the parol evidence rule, the district court was correct to exclude Knight's testimony concerning Interco's alleged oral promises that he could sell his business. The record does not indicate that Knight received such a promise after the contract was signed. Rather, it appears that Interco's consistent position after the written agreement was that while Knight could sell his accounts to an approved buyer, Interco had the ability (under paragraph 21, *see supra*) to terminate Knight with thirty days written notice at any time, for any reason.

The contract says nothing about Knight's authority to sell his business. Rather, it discusses the termination of the agreement only in the terms listed in paragraph 21. Therefore, Knight's second and third contentions, based on the premise that his testimony would not have contradicted or varied the agreement, are meritless. Finally, Knight's fourth contention (that the alleged oral promises by Interco constituted a separate agreement) is unpersuasive because, on its face, the written agreement is a complete statement of Knight's and Interco's respective rights and obligations. The contract covers every issue from compensation to territory to termination. We are not convinced that the alleged promises by Interco that Knight could sell his ac-

counts are separate from the all-encompassing written agreement. If the parties had agreed to the content of the alleged promises Knight alludes to, they could have easily interpolated it into the contract. Instead, they included a strikingly different agreement regarding termination of the contract: paragraph 21.

## III.

Knight also argues for reversal and a new trial because the court failed to give two jury instructions he requested pertaining to the measure of damages. The court ruled that the jury could award Knight no damages exceeding the net commissions he would have earned during the thirty days notice period to which he was contractually entitled. Pursuant to that ruling, it gave the jury the following damage instruction:

### INSTRUCTION NUMBER 9

If you find from a preponderance of the evidence that defendant breached the agreement by terminating it without giving plaintiff the thirty (30) days notice provided for in the written contract, you must fix the amount of money which will reasonably and fairly compensate him for the following damage sustained:

The amount of gross earnings the plaintiff could have reasonably expected to make during the thirty (30) days following his termination less any expenses he would have incurred in making those gross earnings during that thirty (30) day period. Only such damages are recoverable as are the direct, natural and proximate result of the breach and as can be shown with reasonable certainty.

Tr. at 208–09.

Knight contends that this instruction alone is incomplete. In his view, the district court erred in failing to instruct the jury that:

(1) an element of damages the jury could have awarded Knight for Interco's breach of contract was the reasonable amount Knight could have realized for the sale of his business.

(2) Interco could be equitably estopped by its conduct (i.e., by allegedly promising Knight he could sell his accounts and that he could move to Arkansas and continue to work the New Mexico territory) from relying on the thirty days notice provision as a limit on his damages.

We find Knight's arguments concerning the jury instructions unpersuasive. The first instruction Knight contends should have been given is that proceeds he could have received by selling his business should have been an element of his damages. As we concluded above, *see supra* section II, the district court correctly ruled that testimony concerning Interco's alleged promises that Knight could sell his business was barred by the parol evidence rule. Since that testimony was properly excluded, the district court clearly did not err by preventing the jury from considering the sale value of Knight's accounts when it calculated his damages.

Knight also argues that the court erroneously failed to instruct the jury that Interco could be equitably estopped by its actions from arguing that Knight's damages could be limited to thirty days' net commissions. In light of paragraph 21, we believe the district court properly refused to give such an instruction. During the trial, Knight unequivocally admitted that because of paragraph 21, the contract created no commitment for either side beyond the issuance of thirty days written notice:

Q. As a matter of fact, Mr. Knight, at all times, when you were selling for International Hat, you had the right to just simply stop selling, didn't you, if you wanted to?

A. Well, after I give my notice. Lived upon [sic] to the contract.

Q. And if you got a better deal, you were free to take it, weren't you?

A. Yes, sir.

Q. You weren't committed to stay for any length of time, were you?

A. Just thirty days.

Tr. at 119.

Regardless of Interco's actions, an estoppel instruction was not necessary because

Interco had no duty to Knight except to give him thirty days written notice before terminating him. It failed to do so, and the court properly compensated Knight for that failure by awarding him the net commissions he would have earned had Interco given him the required notice.

For the foregoing reasons, we affirm.