NATIONAL AUTOMOBILE INSURANCE COMPANY *v.* DALTON.

4-8608                                214 S. W. 2d 507

Opinion delivered November 15, 1948.

*Pryor, Pryor, Dobbs & Barham,* for appellant.

*Bates, Poe & Bates,* for appellee.

GRIFFIN SMITH, Chief Justice. The judgment for $1,697.40 appealed from was to compensate appellee for a portion of the loss he claimed to have sustained when one of his trucks collided with one owned by a third party. By its verdict the jury found that the truck's value after the wreck was $2,000 less than immediately before; but, under an instruction, credit was allowed for delinquent insurance premium of $202.60. The Court then found that the insuring contract—the terms of which were matters of dispute—provided that $100 should be deducted from any damage recovery; hence the net finding. To this was added a penalty of 12%, and an attorney's fee of $250.

Appellant contends (a) that the policy relied upon, which admittedly did not originally cover the loss in question, and was not subsequently indorsed in writing with that end in view, could not be varied in the manner shown; (b) even if in other respects an oral contract was intended to enlarge the risk, no premium was paid or

tendered, and the transaction was voidable for want of consideration; (c) the verdict is excessive and was induced by inadmissible evidence; (d) in any event attorney's fee and penalty were not recoverable, the verdict having been for $100 more than the Court found to be proper.

*First*—(*a*)—*Oral Contract to Insure.*—Our decisions are in harmony with the general rule that terms of an oral agreement to insure will be enforced if made by a general agent, or on behalf of the Company by one acting within the scope of his actual or apparent authority. Some of the cases are cited in *American Casualty Co.* v. *Rightor,* 212 Ark. 779, 207 S. W. 2d 736.

In the instant appeal it is hinted that the individual connected with the general agency was not in fact authorized to act. Proof on this point is not persuasive. But, say appellants, even if the person whose assurance was relied upon had a right to act, evidence to establish affirmative conduct is too weak to be treated as substantial.

M. C. Bird, cashier of the Bank of Waldron, manages the Hughes Insurance Agency of that city. W. P. Pyles is the Bank's president, and appellee Dalton is Pyles' son-in-law. When the Court heard the controversy resulting in this appeal, Dalton was employed by the Hughes Agency. Prior to February 1947 Dalton owned two trucks used principally in long-distance lumber hauling. Having negotiated for purchase of a new truck, (to be financed through the Bank) Dalton discussed modification of the terms of a National Automobile and Casualty Insurance Company policy he then held. It covered personal injury, property damage, and included a so-called "comprehensive" clause, embracing fire and theft.

Appellant says that "none of these coverages extended to damage to the vehicle owned by Dalton," but there was discussion directed to the advisability of adding collision insurance, with a $100 deductible clause. It is insisted that no indorsement was executed, no premium was paid; neither was there an offer to pay.

Appellee, by substantial evidence, showed that as a condition precedent to the Bank's agreement to finance his purchase of a new truck—chattel mortgage having been executed to the Bank—collision coverage was necessary. Seemingly the Hughes Agency, acting in subordination to a Little Rock general agency, had established a custom of issuing what is termed a "binder,"—that is, it would agree, in consideration of mutual oral commitments, that an existing policy be renewed on a designated date, or its terms modified within permissive limitations. It is not contended that the general agency or its principal intended that indorsements involving added risks should not be evidenced by customary forms, nor is it admitted that a careless custom of adding to or subtracting from original policies had been approved. The insistence is that as an exception to the rule requiring written indorsements, oral assurances of coverage, or extension in point of time, had been given by the Hughes Agency in other cases, with approval by the general agency, therefore acquiescence in the course followed would be implied.

We agree with the trial Court's conclusion in this respect. There is evidence that Dalton, at Bird's suggestion, came to Little Rock in February 1947 and procured from the general agency a penciled notation of what the premium would be if one or more of several optional selections were made. Dalton, upon returning to Waldron, continued his discussions with Bird. The latter, by telephone and letter, communicated with the general agency, and was told that the Company regarded itself as "bound" for the additional coverage. The general agency, for premium payments, looked to Bird's company, and Bird (the Hughes Agency) had a running account with Dalton and charged premiums to him. Since the general agency, in respect of premiums, had no intention of making direct charges to Dalton, the Company as principal is not concerned with that phase of the Hughes-Dalton relationship.

*Second*—(b)—*Want of Consideration.*—If, in deviating from a regular course of business, the Hughes Agency failed to immediately report a particular pre-

mium, the binding quality of Bird's, assurance of coverage, as reflected by substantial evidence in the case at bar, was in no respect affected. Consideration is found in the fiscal confidence existing between Bird and the Little Rock agency.

*Third—(c)—Excessive Verdict.*—A determination of this issue is more difficult than either (a) or (b). The policy provides that if damage occurs the Company's liability is limited to an amount not in excess of the actual cash value [when loss is total], " . . . or if the loss is of a part thereof, the actual cash value of such part at the time of loss"; nor can the liability exceed " . . . what it would cost to repair or replace the automobile, or such part thereof, with other of like kind and quality, with deduction for depreciation."

When a report was initially made, the Little Rock agency assumed, in consequence of information received from Bird, that appellant's policy covered the claim, and an adjuster named Anthony was sent to Waldron to make inspection. He did not testify; neither did any direct representative of the Little Rock agency.

Dalton testified that he had the wrecked truck towed to Fort Smith and turned it over to Crouch Equipment Company. Loss was reported to the Hughes Agency, and soon thereafter Anthony appeared. "Then," said Dalton, "[Anthony and I] arrived at a repair estimate."

At this period in the attempt to adjust there were no differences between Anthony and Dalton. Two estimates of repair costs were procured: one made by the Crouch Company, the other by R. A. Young & Son. Young's bid was the lowest; but, with Anthony's approval, Dalton gave the business to Crouch. When asked whether "any particular part of the truck—any place that was damaged—was not repaired," Dalton replied, "No, sir. They repaired all the damage that was done. Still, that didn't put it back in the same shape." Dalton did not, in an effort to have the truck restored to its original condition, personally complain to Crouch, although on two or three occasions his driver "had some work done." Crouch did not refuse to do anything re-

quested, and " . . . they repaired the damage done in this particular wreck."

There was opinion testimony by appellee and two other witnesses regarding value of the truck before the wreck, and its value after the damage was done, to which objections were made and exceptions saved.

There are cases where, in spite of policy provisions limiting liability to repairs, a different method of computing the plaintiff's loss would be justified by conduct of the insurer, or negligence of the mechanic selected by direction of the insurer. Where restoration is undertaken with consent of the insured, the work must, as to quality, attain an approved standard; and if, upon reasonable notice given in the exercise of ordinary diligence in calling to the insurer's attention defects in workmanship such defects are not overcome, or if it is found that inferior materials were used, or the result is poor because parts do not fit, or there is a want of alignment preventing performance as the manufacturer intended,— if in these circumstances there is refusal to make amends, then in spite of language like that appearing in the contract with which we are dealing, value of the vehicle before and after damage, less depreciation, could represent the sustained loss.

In *General Exchange Insurance Co.* v. *Norville,* 199 Ark. 115, 132 S. W. 2d 789, Mr. Justice HUMPHREYS said for the Court that the appellant, who was not a mechanic, could not fix total liability upon the insurer by testifying that when the accident occurred " . . . the car turned over once, and around and over on its back on the top." The motor, said the witness, was burning at the time he "crawled out," and continued to burn for about thirty minutes. The left side of the car was demolished, "and the running gear was damaged so that it had to be towed to [a garage] in Waldron. It was not in condition to operate on its own power after the accident." A mechanic named Lindsay, who had not seen the car, testified in response to a hypothetical question, expressing a belief that the vehicle could not by repairs be restored to its condition before the accident.

Defense witnesses who were skilled mechanics testified that the car could be restored at a cost of $220. In his opinion Judge HUMPHREYS said it was apparent from photographs that damage to the car body could have been repaired, "when considered in connection with testimony of the four practical and experienced mechanics, [and] the conclusion is irresistible that the car was only partially damaged, and in such a way that it might be repaired and restored to its condition at the time of accident." Effect of the opinion was that the substantial evidence—testimony of the mechanics—relative to the extent of damage " . . . might well be regarded as undisputed." The decision was cited in the appeal of *Home Insurance Company* v. *Springdale Motor Co.*, 200 Ark. 893, 141 S. W. 2d 522, but with a different result. In that case, however, it was urged that salvage value of a truck after damage by fire did not exceed $100; that parts necessary to restore the vehicle to its condition before the fire could have been purchased and installed for $246.96. It will be observed that the repairs had *not* been made. Testimony relied upon by the insurer was the expression of opinions that a certain result would attend if something else were done.

Dalton is in a different position. He fully acquiesced in Anthony's belief that the truck could be restored. If, after receiving the fullest coöperation from the Crouch Company in circumstances showing (according to his own testimony) its willingness to fully perform under the contract to restore,—if appellee had in a timely manner pointed to substantial insufficiencies, and this had been followed by refusal, an altered case would be presented. Dalton testified that an entirely new cab was installed but, expressed in general terms, he did not believe *any* truck was as good after a wreck as it was before, for—"the repairs didn't put it back in the same shape." But it must be remembered that Dalton readily affirmed that Crouch *"repaired the damage done in this particular wreck."*

Appellee's action in accepting the truck in its reconditioned form, with continued use in his business, coupled with the acknowledgment that all of the damage had

been taken care of by Crouch, combine to destroy substantial basis for his general opinion that the truck just wasn't as good after the wreck as it was before. That part of the policy giving the right of repair could not be arbitrarily read out of the contract.

*Fourth—(d)—Penalty and Attorney's Fee.*—Since the judgment must be reduced to comport with the preceding findings, the statutory penalty of 12%, and the Court's allowance of an attorney's fee, would not be proper. Judgment is rendered here for an amount equal to the repair bill, less $100 "deductible," or $889.21. Against this appellant may offset the unpaid policy premium.

With these modifications the judgment is affirmed.