PAPAN *v.* RESOLUTE INSURANCE COMPANY.

4-9663                                          245 S. W. 2d 565

Opinion delivered January 28, 1952.

*Kenneth C. Coffelt,* for appellant.

*Owens, Ehrman & McHaney,* for appellee.

GRIFFIN SMITH, Chief Justice. The appellant who was plaintiff below sustained slight personal injuries and his truck was damaged when a collision occurred with a Checker Cab Company vehicle at a point on Highway 67-70 where the thoroughfare is intersected by the Boyle Park road west of Little Rock. Papan was insured by the Resolute Company. It indemnified—subject to a deduction of $50—for any loss he might sustain if the truck should be damaged by a third party. The mishap occurred June 27, 1950, and Papan personally reported to

the insurance company that day, with the result that emergency repairs were made in order that the owner might drive to his home at Benton, in Saline county. The insurance carrier requested Papan to procure and submit to it three estimates of property damage. There was no suggestion that responsibility should be shifted; and, of course, the request for estimates with knowledge of the damage was an implied admission of liability.

The following day Papan employed Kenneth C. Coffelt to represent him. The written contract called for fifty percent of any amount collected from the cab company, "or other responsible parties."

On behalf of the insurance company, adduced through cross-examination, there was testimony that its representatives went to appellant's home to discuss an adjustment, but the claimant was not to be found. Mrs. Papan was asked to inform her husband of the visit and to have him call again at the Little Rock office.

On August 4th Papan released the cab company for an unapportioned payment of $600. Through Coffelt he then sued Resolute for $148.66 and for a twelve percent penalty. This was upon the theory that $347.32 of the sum received represented actual damages to the truck. By deducting $50 as provided by the policy the remainder would be $297.32; and, since the attorney was paid half of this remainder, the actual loss was the difference sued for.

The trial court (a jury having been waived) found that Papan had deprived the insurer of its contractual right of subrogation, since the release could be pleaded in any action it might bring. There were further findings (a) that the attorney was employed before an opportunity to pay had been given under the policy terms, and (b) the company at all times had been willing to discharge its obligations under the language and within the spirit of the contract. It was not denied that $500 had been demanded. In a letter written by Papan's attorney June 30th to Murdock Acceptance Corporation as agent for Resolute, it is stated that ". . . the differ-

ence [apparently] between the value of Papan's truck before and after the collision amounts to about $500."

Appellant claims that $347.32 was the low of three estimates he received. He also testified that five or six efforts to get a settlement were made. When Coffelt asked his client during the trial if copies of the estimates were turned over to Resolute the witness replied that he thought he gave them to Coffelt, but added that the insurance company received the information. The physical injury (not covered by the policy in question) was in the nature of a back wrench. In answering Coffelt's questions Papan said that he had supplied Resolute with proof "of that fact."

Papan was somewhat hazy regarding the nature of his cause of action and the amounts apportionable to personal injury and to property damage, but he testified that in settling with the taxicab company he collected "240 and some odd dollars" for damage to the truck. His attorney corrected the witness with the statement that it was $300. Papan later stated that he understood that the settlement was made on the basis of Crawford Motor Company's estimate of $347.32.

When asked whether, on June 27th, the insurance company requested that repair estimates be procured and given to it, Papan replied that he did not comply with this request, but instead went to Coffelt. Appellant admitted that a finance corporation held a lien on the truck for more than a thousand dollars. His desire was to dispose of the truck without having it repaired—that his real purpose was to trade for a new unit. This specific question was asked: "You did not want this insurance company to repair your truck, but you wanted to trade it off—is that correct?" Answer: "I tried to get them to pay them off so I could trade this truck in." We are unable to say whether, when Papan repeated the word "them," the trial judge took the answer to mean that the insured had endeavored to get Resolute to discharge the lien; and this is true notwithstanding a supplemental answer that the finance company wanted to collect carrying charges for two years.

When the truck was traded to Sadler-Ross Motor Company the buyer very shortly ascertained that the lien was outstanding. The new truck was repossessed and the old one returned. Appellee states in its argument that during this interim period the truck was repaired, but there is no testimony directly sustaining this contention, and Papan testified that he later spent $186 on it. This outlay, said appellant, did not restore the property to its former status.

When asked what he was suing for Papan replied, "Damages to the truck and myself." Question: "[Your claim, then] is for personal injuries and the damage to your truck?" Answer, "Yes." These same elements, he said, were covered in the taxicab company settlement; but, when asked how much of the $600 payment was for personal injuries the witness replied, "Well, about fifty dollars of it." The cross-examination was objected to as irrelevant because the complaint set out the legal claim. After a short colloquy with amplifying statements by counsel, the cross-examining attorney asked: "Have Mr. Coffelt's comments helped you in your testimony?— can you now state the amount of your personal injuries?" Answer: "About $50, . . . and my understanding was that $550 was for the truck damage."

In his brief appellant stresses a rule that his measure of damage was the fair market value before and after collision, and that the difference would necessarily be the loss he had sustained. This, of course, is one of the standards applicable and it may be invoked where the circumstances warrant a before-and-after determination. If the insurance company had declined, expressly or by inference, to abide the terms of its policy, there might be ground for saying that such refusal fully justified the methods suggested for loss appraisal. It is true that appellant testified that he tried repeatedly to effectuate a settlement, but his own admission that he did not want the truck repaired was sufficient to justify the trial court in believing that the $500 demand was never unconditionally receded from and that the company was under no compulsion to pay more than the cost of complete restoration.

Policy Condition No. 3 permits the insurer to pay for the loss in money, "or it may repair or replace the automobile." There is a provision for arbitration in the event an agreement can not be reached, but such an arrangement is contrary to this state's public policy, Ark. Stat's, § 66-509, *Insurance Company of North America* v. *Kempner*, 132 Ark. 215, 200 S. W. 986. But (*National Automobile Ins. Co.* v. *Dalton*, 214 Ark. 120, 214 S. W. 2d 507), it has not been held that when the insurer, in an undertaking concurred in by the insured, attempts in good faith to ascertain what the actual damage is and to either pay that sum or have the property completely restored, nevertheless the insured may hold out for a cash settlement substantially in excess of reasonable compensation until litigation or an adjustment with a third party on his own terms has been completed, then require the insurance company to pay an attorney's fee and submit to a penalty because the result was not what had originally been hoped for.

In substantiation of appellee's contention that the trial court had substantial evidence upon which to rest the judgment, appellant's inconsistent statements were properly reviewable in determining the intentions of the parties. Coffelt testified that in his settlement with the taxicab company he treated $347.32 as truck damage and the difference of $252.68 as personal injury compensation. Half of $347.32 would be $173.66; but, according to the attorney, Papan "received out of said sum the balance of $148.66, which was his one-half due under the contract."

But Papan says that "about fifty dollars" would compensate his personal injuries, so $550 must have been for damage to the car. If he received half of this sum the recovery for property damage was $275,—just $22.32 short of $347.32 used by the plaintiff as a basis for the attorney's fee after $50 corresponding with the so-called "deductible" is subtracted.

Section 66-514, Ark. Stat's, has not been construed as authority for the proposition that an insured who chooses to pursue the party whose negligence is alleged to have

caused the injury or damage may hold in abeyance his claim against an insurance carrier (or make excessive demands as the trial judge here was justified in finding), then collect from the tortfeasor under acceptable terms and finally complete the cycle by returning to the insurance company with a demand that an attorney's fee be paid and that the company be penalized for delay.

The circuit court properly dismissed. Judgment affirmed.