Curtis C. MILLER, Plaintiff,

v.

The AMERICAN INSURANCE COM-PANY OF NEWARK, NEW JER-SEY, Defendant,

Yellow Manufacturing Acceptance Corporation, Intervenor.

Civ. A. No. T-519.

United States District Court
W. D. Arkansas, Texarkana Division.

Aug. 20, 1954.

Boyd Tackett, of Shaver, Tackett & Jones, Texarkana, Ark., for plaintiff.

James I. Teague, of McMillen, Teague & Coates, Little Rock, Ark., for defendant.

W. H. Arnold, Jr., and W. H. Arnold, III, Texarkana, Ark., for intervenor.

LEMLEY, Chief Judge.

This cause comes on to be heard upon the defendant's plea, set out in the third paragraph of its answer, to the effect that this action has been prematurely brought and should be dismissed for that reason, and has been submitted upon written briefs. The facts necessary for decision are not in dispute and are substantially as follows:

On or about October 4, 1952, Curtis C. Miller, the plaintiff, a citizen of Texas, obtained from the defendant a policy of insurance covering a certain 1952 Model GMC truck owned by him; under the terms of this policy, which policy was written and delivered in Texas, the defendant agreed, among other things, to pay to the plaintiff the actual cash value of any loss of or damage to the truck and its equipment caused by fire. At the time the policy was issued, plaintiff's ownership of the truck was subject to a lien in favor of Yellow Manufacturing Acceptance Corporation, intervenor herein, and said policy contained a loss payable clause in favor of said corporation. On January 19, 1953, while plaintiff was driving the truck along U. S. Highway No. 71 near Mena, Arkansas, the vehicle took fire and was materially damaged. The defendant concedes that at the time of the fire the plaintiff's policy was in full force and effect. The policy contained a provision to the effect that should a loss occur and a disagreement arise as to the amount of such loss, the dispute should be submitted to arbitration [1]. After the fire a dispute did arise between the plaintiff and the defendant as to the amount of loss, and the latter demanded arbitration in accordance with the terms of the policy. The plaintiff, however, refused to submit to such arbitration and commenced this action, after the defendant had refused to pay the amount which he demanded.

It is the contention of the defendant that since the policy in suit was a Texas policy, the validity and effect of the arbitration provision are governed by the law of that state; that under Texas law said provision is reasonable and valid,

---

1. The arbitration provisions were as follows: "2. Appraisal. If the insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the insured or the Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire."

and that compliance with its terms is a condition precedent to suit.[2] Hence, defendant argues, the plaintiff was required to submit to arbitration, and since he refused to do so, his action is premature.

The plaintiff does not deny that the policy provision in question was valid under Texas law, nor does he deny that as a general rule the validity of contractual provisions, including provisions contained in an insurance policy, is to be determined by the law of the place where the contract is made. He contends, however, that by virtue of Act 111 of the Acts of the General Assembly of the State of Arkansas for the year 1903, Ark. Stats.1947, § 66–509, said provision is void in Arkansas[3], that the Arkansas statute manifests a settled public policy of the State hostile to such provisions, and that the arbitration clause here involved is not enforceable in Arkansas, notwithstanding its validity in Texas[4].

■■ From these contentions of the parties it is clear that the problem here is purely one of conflict of laws; and in solving this problem we are required to ascertain and apply the Arkansas law of conflict of laws. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313

U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. While the Supreme Court of Arkansas has apparently not had occasion to determine whether or not Act 111 of 1903 is applicable to an insurance policy executed in another state in favor of a citizen of such state, we are satisfied from our consideration of the matter that if and when such question is presented to that Court, it will hold that said statute does not apply to an out-of-state policy, and will uphold an arbitration provision in such a policy if valid under the law of the state where the policy was executed; and we so hold in the instant case.

■ The general rule that a contractual provision which offends the settled public policy of the forum will not be enforced notwithstanding its validity under the lex loci contracti is not one of universal application. Such is applicable only in cases where the public policy which is offended is a *strong* public policy of the forum; to hold otherwise would leave practically nothing of the rule that the validity of a contract is governed by the law of the place where the contract is made and would do violence to the doctrine of comity upon which so much of the law of conflict of laws is built.

**2.** Defendant cites in this connection Boston Insurance Co. v. Kirby, Tex.Civ. App., 281 S.W. 275, and Springfield Fire & Marine Insurance Co. v. Barnett, Tex. Civ.App., 213 S.W. 365.

**3.** The language of the statute is as follows: "No policy of insurance shall contain any condition, provision or agreement which shall directly or indirectly deprive the insured or beneficiary of the right to trial by jury on any question of fact arising under such policy, and all such provisions, conditions or agreements shall be void." There is no question that under the terms of this statute an arbitration or appraisal provision in an insurance policy written in Arkansas is void and will not be enforced by the courts of that State. Firemen's Insurance Co. v. Davis, 130 Ark. 576, 198 S.W. 127, Insurance Company of North America v. Kempner, 132 Ark. 215, 200 S.W. 986, and Papan v. Resolute Insurance Co., 219 Ark. 907, 911, 245 S. W.2d 565.

**4.** In 15 C.J.S., Conflict of Laws, § 4, p. 853, it is said: "It is thoroughly established as a broad general rule that foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the forum." A number of cases, both state and federal, are cited in support of that statement, and counsel for the plaintiff have cited us to certain similar cases, none of which, however, is squarely in point. Prior to the enactment of Act 350 of 1951 the Courts of Arkansas, in the application of this principle, refused to enforce provisions in promissory notes for the payment of attorneys' fees, notwithstanding the validity of such provisions under the laws of the states where the notes were executed or were payable. Arden Lumber Co. v. Henderson Iron Works & Supply Co., 83 Ark. 240, 103 S.W. 185; White-Wilson-Drew Co. v. Egelhoff, 96 Ark. 105, 131 S.W. 208.

■ The mere fact that a contractual provision, valid under the lex loci contracti, is violative of a statute of the forum does not necessarily mean, as the plaintiff appears to contend, that said provision will not be enforced at the forum. This is illustrated by the decisions in Dodd v. Axle-Nut Sign Co., 126 Ark. 14, 189 S.W. 663, Smith v. Brokaw, 174 Ark. 609, 297 S.W. 1031, and Swann v. Swann, C.C.Ark., 21 F. 299. In Dodd v. Axle-Nut Sign Co. the defendant executed in Missouri a note evidencing the unpaid purchase price for certain rights in a patented article, which note was secured by a mortgage on Arkansas land; said note was valid under the laws of Missouri but was invalid under the Arkansas law because it did not comply with the provisions of Act 162 of 1891, Ark.Stats.1947, § 68–901, which required such notes to be executed on a printed form and to show on their face for what they were given. Suit on the note and mortgage was brought in Arkansas, and in allowing recovery the Court applied the law of Missouri notwithstanding the provisions of the Arkansas statute. In the Brokaw case a note and a mortgage covering Arkansas land were executed in Oklahoma; the note was valid under Oklahoma law but was absolutely void for usury under the provisions of Article 19, Section 13 of the Arkansas Constitution of 1874, as implemented by Act 56 of 1875, Ark. Stats.1947, §§ 68–602, 68–603 and 68–608; the Court in allowing recovery applied Oklahoma law. And in Swann v. Swann suit was brought in a federal court in Arkansas upon a note executed in Tennessee on a Sunday; the note was valid under Tennessee law but was invalid in Arkansas by virtue of an Arkansas statute, Rev.Stat. Ch. 44, div. 7, art. 2, sec. 1; Ark.Stats.1947, § 41–3801; the Court allowed recovery by applying the lex loci contracti. It will be seen from these decisions that Arkansas has a public policy against Sunday contracts and a public policy against notes given to evidence the purchase price of patented articles unless such notes are in a certain form, both of which policies are expressed in statutes, and that Arkansas likewise has a public policy against usury, expressed both in her Constitution and in her statutes; none of such policies, however, has been considered sufficiently strong to prompt the Arkansas courts to apply the lex fori rather than the lex loci.

■ In 15 C.J.S., Conflict of Laws, § 4 at page 855, it is said that: "It is usually held that to justify a court in refusing to give effect to or enforce foreign law or rights because it would be against public policy, it must appear that it would be against good morals or natural justice, or for some other reason would be prejudicial to the state or its citizens, the mere fact that the law of two states or nations differs not necessarily implying that the law of one violates the public policy of the other."

■ There is certainly nothing inherently wrong, immoral or against natural justice in arbitration agreements; on the contrary, the modern tendency of the courts is to look with favor upon such agreements, at least to some extent. See in this connection our opinion in W. R. Grimshaw Co. v. Nazareth Literary & Benevolent Institution, D.C.Ark., 113 F.Supp. 564. Nor do we think that to uphold the arbitration provision included in the policy in suit would in any manner prejudice the State of Arkansas or any of her citizens. Granting that Arkansas has the right to protect her own citizens from policy provisions of this kind, and that she has made void by statute such provisions in insurance policies written in this State, it does not follow that she has any legitimate interest in regulating the dealings between insurance companies and citizens of other states expressed in insurance policies written and delivered elsewhere. On the contrary, it seems to us that to so hold would be to give an unreasonable out-of-state scope to a statute, which we think was designed for the protection of Arkansas people. In this connection we feel that the language of the Court in Dodd v. Axle-Nut Sign Co.,

**164**

supra, is applicable here; it was there said:

"This statute was intended for the protection of the citizens of the state, and makes void all notes given for patent rights or territory which are executed in this state and do not comply with the statute. * * * We do not think, however, the section has any application to the facts of the instant case. The original contract was executed at St. Louis, in the state of Missouri. It was a Missouri contract. No attempt is made to show that the original note and contract was not valid under the laws of the state of Missouri. Consequently the contract was valid under the laws of that state, and it will be enforced and adjudicated in the courts of this state precisely as it would be adjudicated in the courts of the state of Missouri." 126 Ark. at page 18, 189 S.W. at page 664.

Moreover, there was far more reason in both the Axle-Nut case and the Brokaw case to apply the rule upon which the plaintiff here relies than there is in the instant case, since the notes sued on in both of those cases were secured by mortgages on Arkansas land, whereas here the only connection between Arkansas and this policy and the truck covered thereby, other than the fact that the suit, a transitory action, has been filed here, arises out of the circumstance that the truck caught fire near Mena. We might point out that if the plaintiff is correct in his argument, the same result would be reached regardless of whether the truck burned in Arkansas, or Texas, or elsewhere; thus, regardless of where a policy of insurance might be written, or where the insured might live, or where the loss might occur, the insured could nullify the arbitration clause in his policy by the simple device of suing in Arkansas, provided that he could get service. We do not ascribe to the Arkansas Legislature an intent to give to its enactment such a sweeping, and, to our mind, unreasonable extra-territorial effect.

Our decision that the suit has been prematurely brought renders it unnecessary to state or to discuss other issues presented by the pleadings. Let an order be entered dismissing the case, without prejudice to future action after an appraisal has been had.